The **BETTER BUSINESS BUREAU OF METROPOLITAN HOUSTON, INC.,** **The Better Business Bureau of Metropolitan Houston Education Foundation, Dan Parsons, Chris Church, Church Enterprises, Inc., Gary Milleson, Ronald N. McMillan, D'Artagnan Bebel, Mark Goldie, Charlie Hollis, and Steven Lufburrow, Appellants**

v.

**JOHN MOORE SERVICES, INC. and John Moore Renovation, LLC, Appellees**

NO. 01–14–00687–CV

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued June 2, 2016

Bobbie L. Stratton, Lori Hood, Douglas Pritchett, Jr., Tamar Madden, for Appellee.

Lauren B. Harris, Susan K. Hellinger, Jeffrey R. Elkin, M. Harris Stamey, for Appellant.

Panel consists of Justices Keyes, Bland, and Massengale.

## OPINION

Jane Bland, Justice

This is a second state court lawsuit involving parties who are in a dispute over membership in an association that circulates business ratings to consumers in the

Houston area, and the ratings themselves. Our court dismissed the first suit based on the Texas Citizens' Participation Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–27.011. In this interlocutory appeal in the second lawsuit, we determine whether we have jurisdiction over the appeal. Concluding that we do, we examine whether the requirements for dismissal under the TCPA have been met in the second state court lawsuit. We conclude that they have. Accordingly, we reverse the denial by operation of law of the motion to dismiss under the TCPA and remand the case for the trial court to award court costs, reasonable attorney's fees, and other expenses incurred by the appellants in defending themselves against John Moore's legal action, and impose sanctions on John Moore as the trial court determines sufficient to deter John Moore from bringing similar actions. *See id.* § 27.009(a).

## BACKGROUND

The Better Business Bureau of Metropolitan Houston, Inc. (the Houston BBB), the Better Business Bureau of Metropolitan Houston Education Foundation, Dan Parsons, Chris Church, Church Enterprises, Inc., Gary Milleson, Ronald N. McMillan, D'Artagnan Bebel, Mark Goldie, Charlie Hollis, and Steven Lufburrow appeal the trial court's denial by operation of law of their motion to dismiss brought under the TCPA. The Houston BBB is a nonprofit corporation that provides the general public with consumer information and reviews about local businesses. John Moore Services, Inc. and John Moore Renovation, LLC, (collectively, John Moore) are home services companies that provide plumbing, electrical, security and home renovation services to consumers in Houston and the surrounding areas. Don Valentine is the Owner and President of John Moore. Dan Parsons is the Chief Executive Officer of the Houston BBB. Valentine is a former Chairman of the Houston BBB Board of Directors, and John Moore was a member of the Houston BBB from 1971 until it resigned in November 2010.

The parties are embroiled in a dispute over the Houston BBB's ratings for local area businesses that it publishes on its website. Before December 2010, the Houston BBB published an "A+" rating for John Moore. Around that time, the BBB changed its ratings criteria, which adversely affected John Moore's BBB rating. John Moore protested the changes but could not persuade the Houston BBB to raise John Moore's rating, leading John Moore to resign its membership in the Houston BBB. John Moore's resignation coincided with the Houston BBB's decision to revoke John Moore's accreditation and membership with the Houston BBB.

John Moore continued to use the Houston BBB's logo in its advertising about awards that John Moore had received from the Houston BBB in the past; the Houston BBB viewed these displays as an infringement on its trademark, and claimed that its rules provide that only currently accredited Houston BBB members may advertise using the Houston BBB logo. John Moore also attempted to affiliate with other branches of the BBB, namely the Bryan–College Station BBB and the Dallas BBB, by contending that its "home office" was now located in these cities. When an investigation revealed that John Moore did not have operations in these cities, the branches rescinded its affiliation with them. In April 2012, the Houston BBB gave John Moore an "F" rating and posted information about the parties' dispute. In the two years prior to that rating, John Moore was listed as "NR" or "not rated" because its business headquarters was listed as having moved, first to Bryan–College Station, and then to Dallas.

The Houston BBB sued John Moore in federal court, seeking a declaration that John Moore desist in using its name and logos. *See* Cause No. 4:12–CV–00964; *Better Bus. Bureau of Metro. Houston, Inc. et al. v. John Moore Servs., Inc. et al.*; in the United States District Court for the Southern District of Texas, Houston Division. The parties resolved the federal suit when Don Valentine filed a declaration that John Moore would no longer use the Houston BBB name or logo.

John Moore then filed two state court lawsuits, including the one that has prompted this appeal. Because the relationship between the first and second lawsuits factors in our disposition, we discuss the procedural history of both.

### The First Lawsuit

The first state court lawsuit involved most of the parties to this appeal, and this court thoroughly described the background of that case in the course of deciding an interlocutory appeal. *See Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 350–51 (Tex.App.—Houston [1st Dist.] 2013, pet. denied) (*BBB I* ). In summary, John Moore sued the Houston BBB, alleging numerous causes of action relating to the Houston BBB's business ratings and reviews. *Id.* at 351. John Moore alleged claims for fraud, tortious interference with existing and prospective business relationships, business disparagement and defamation.

The Houston BBB moved to dismiss under the TCPA, asserting that John Moore's legal action was "based on, relates to, or is in response to" the exercise of the Houston BBB's right of free speech and that John Moore lacked evidence that demonstrated a prima facie case for each element of its claims. *Id.* After the trial court denied the motion to dismiss, the Houston BBB filed an interlocutory appeal. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003.

While that appeal was pending, the trial court issued a docket control order, which required joinder of any additional party by November 16, 2012, and imposed an April 6, 2013 deadline for filing amended and supplemental pleadings. That docket control order set trial for July 5, 2013. The parties proceeded with discovery and, when the docket deadlines neared, filed an agreed motion for continuance, which the trial court granted. The new docket control order extended the pleading amendment deadline until July 26, 2013, and reset trial for October 21, 2013.

On July 16, 2013, our court issued an opinion reversing the trial court's denial of the Houston BBB's motion to dismiss the first lawsuit under the TCPA. Our court held that the Houston BBB had satisfied its burden under the TCPA to show that John Moore's claims in the lawsuit related to or were in response to the exercise of the Houston BBB's right of free speech. Furthermore, our court determined that John Moore had failed to sustain its burden to avoid dismissal under the TCPA. *Id.* Accordingly, our court remanded the case for proceedings to award costs, attorney's fees, expenses, and sanctions as mandated under the TCPA. *Id.*

John Moore then filed an amended petition in the trial court in *BBB I*—two months after the trial court's extended pleading amendment deadline and this court's first opinion in the case. The amended petition added members of the Houston BBB's board of directors, the Houston BBB's president, and the Houston BBB's Education Foundation. The amended petition alleged the following:

- **The Better Business Bureau of Metropolitan Houston Education Foundation:** John Moore claimed

that the Foundation's director encouraged John Moore to display the Award of Excellence emblem and the BBB logo in its advertising, which became an issue between the parties. The Foundation also was a party to the federal trademark infringement lawsuit against John Moore.

- **Dan Parsons, the Houston BBB President:** According to the amended petition, Parsons, "engaged in a personal campaign to damage John Moore's business throughout Texas" by manipulating and misleading the Houston BBB board and committee members into seeking revocation of John Moore's membership and by influencing other regional Bureaus into denying John Moore headquarter status outside of Houston.

- **Houston BBB Board of Directors members:** Chris Church, Gary Milleson, Ronald N. McMillan, D'Artagnan Bebel, Mark Goldie, Charlie Hollis, and Steven Lufburrow are named as directors who allegedly conspired with Parsons and the Houston BBB to end John Moore's membership status, arbitrarily change its rating by the Houston BBB, and unlawfully restrain John Moore by impairing its ability to compete in and forcing it from the Houston market.

The amended petition also added state law antitrust claims against the Houston BBB and the other defendants, based on an alleged tying agreement to produce "unbiased ratings and fair commentary." On the Houston BBB's motion, the trial court struck John Moore's amended pleading, relying on the automatic stay provision of Chapter 51 of the Civil Practice and Remedies Code, which the Legislature had by that time amended to apply to TCPA appeals. *See* TEX. CIV. PRAC. & REM. CODE

ANN. § 51.014(a)(12) (West 2015) (eff.Jun. 14, 2013).

John Moore petitioned the Supreme Court of Texas for review of our court's decision in the interlocutory appeal. *See id.* § 51.014(b) (West 2015). The Supreme Court denied John Moore's petition for review on February 14, 2014. *John Moore Servs., Inc. v. Better Bus. Bureau of Metro. Houston, Inc.*, No. 13–0658 (Tex. Feb. 14, 2014). At that point, *BBB I* returned to the trial court for the required assessment of attorney's fees and costs under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a) (providing for the mandatory assessment of court costs and attorney's fees in cases in which relief is granted). On remand, the parties tried the issue of attorney's fees to a jury. The trial court awarded attorney's fees based on the jury's verdict and entered a final judgment. John Moore has appealed that judgment, and we issue our opinion and judgment in that appeal together with the opinion and judgment in this case. *See John Moore Servs., Inc. v. Better Bus. Bur. of Metro. Houston, Inc.*, No. 01–14–00906–CV, 2016 WL 3162206 (Tex.App.—Houston [1st Dist.] Jun. 2, 2016).

### The Second Lawsuit

After the trial court struck John Moore's amended petition in *BBB I*, John Moore filed a second state court lawsuit—the basis for this appeal—against the Houston BBB and others. In this second suit, John Moore added the same claims and defendants that John Moore unsuccessfully had attempted to add in *BBB I* through an amended petition after it failed to prevail on appeal in *BBB I*. John Moore also added as a defendant Church Enterprises, a Houston plumbing company that is a member of the Houston BBB and owned by one of the board member defendants. The second suit was transferred to

the trial court in which *BBB I* remained pending.

In its petition in this suit, John Moore alleges that its claims "are distinct from the live pleadings in [*BBB I*] and are not pending in the appellate courts." It further alleges that the causes of action do not arise out of the defendants' free speech rights "in any respect."

The petition, however, largely mirrors the amended petition struck by the trial court in *BBB I*. The second suit again alleges claims for fraud, state law antitrust violations, breach of contract, civil conspiracy, and violations of the DTPA. With respect to the individual defendants, John Moore alleges that "[e]ven when acting in a representative capacity, the individual Defendants are personally liable for their individual acts." It alleges that each defendant "unlawfully conspired with the Houston BBB and the other Defendants as set forth herein," and that the Houston BBB unlawfully "tie[d]" John Moore's entry into the home repair and renovation market to participation in the business ratings/consumer advocacy market and to the Houston BBB's interference in its business practices." It alleges that the Houston BBB has "market power in the home repair and renovation market because of the influence that it has with John Moore's potential customers."

With respect to defendant Church Enterprises, the newly added defendant, John Moore alleges that "Church also has market power in the home repair and renovation market because of his company's market share and other factors." John Moore alleges that Church Enterprises and the other defendants together unreasonably restrained trade in the home repair market by reducing John Moore's ability to compete and interfered with John Moore's contractual relationships with its customers by revoking John Moore's right to advertise the "Awards for Excellence" that it had received from the Houston BBB before the Houston BBB revoked John Moore's membership in the organization.

### The Motion to Dismiss Under the TCPA and the Appeal

The Houston BBB timely moved to dismiss the second lawsuit under the TCPA. In its motion, the Houston BBB contended that (1) "this lawsuit involves the same facts and circumstances that were at issue in [*BBB I*]"; (2) the lawsuit is an "action to interfere with the Houston BBB's publication of business reviews and ratings" that seeks to circumvent the decision in *BBB I*; (3) the lawsuit was filed in response to the Houston BBB's exercise of its free speech rights; and (4) John Moore cannot establish a prima facie case for each essential element of its causes of action with clear and specific evidence.

As evidence in support of its motion to dismiss, the Houston BBB and other defendants attached (1) the amended petition that the trial court struck in *BBB I*; (2) Valentine's declaration that he filed on behalf of John Moore in the parties' federal court proceeding, together with exhibits of BBB logos used by John Moore in its advertising; and (3) an affidavit from Susan Schade, the Senior Director of Dispute Resolution and Alternative Dispute Resolution for the Houston BBB, which attached the Houston BBB's 2012 accreditation standards and a statement of its dispute with John Moore, published on its website at that time.

In his declaration filed in the federal suit, Valentine averred that John Moore had received the Houston BBB Award of Excellence from 2003 through 2010 and used the award logo in its advertising and marketing campaigns, but as of October 2013, it had "discontinued all use, in any form, format, or context, of the name 'BBB' and/or 'Better Business Bureau'"

and the BBB logos. Valentine's declaration resolved the federal suit.

In her affidavit, Schade averred that membership in the Houston BBB is voluntary. Members must agree to abide by its Code of Business Practices; meet or exceed a minimum rating level; and pay a membership fee. The Houston BBB generates a letter rating that reflects its opinion of its members' services, but a rating is not a guarantee of reliability or performance.

In response to the Houston BBB defendants' motion to dismiss, John Moore amended its petition and moved for limited expedited discovery, which the trial court granted. John Moore sought discovery of the Houston BBB's advertising and ratings requirements, consumer complaints relating to John Moore, and correspondence between the Houston BBB and the Bryan–College Station BBB. The trial court ordered the Houston BBB to produce the complaints that lead to John Moore's change in rating status.

John Moore then filed a response on the merits in the trial court. In its response, John Moore details the ratings process at the Houston BBB and the kinds of customer complaints that factor into the ratings process. When John Moore was no longer allowed to use either Dallas or Bryan–College Station as its headquarters, it contends that the Houston BBB documented an additional 392 complaints against John Moore in its database, and that some of these complaints were duplicates of existing complaints.

John Moore alleges a conspiracy to remove it from the Houston BBB membership beginning in March 2010, in which Parsons and John Moore's competitors fabricated customer complaints and breaches of the Houston BBB's advertising rules. It further alleges that the Houston BBB cancelled its advertising cooperative, in which the Houston BBB purchased bulk advertising for the use of its members. When it was a member, John Moore had purchased a significant portion of this advertising for its advertising needs.

In support of its response, John Moore attached an additional affidavit from Don Valentine, to which the Houston BBB filed 169 objections. It details John Moore's history with the Houston BBB, and that in early 2010, the number of complaints against John Moore reported by the Houston BBB "began to trend upward." Valentine averred that many of these complaints were from consumers who were unhappy with the quoted price for the work or who later found better pricing for their repair work. He further averred that pricing complaints are not the type of complaint that the Houston BBB uses to rate its members. According to Valentine, in the summer of 2010, John Moore agreed to modify an advertisement regarding a special on drain cleaning after consumers complained to the Houston BBB that their situation did not qualify for the advertised offer. He avers that the Houston BBB led him to believe that this issue was resolved. Unbeknownst to Valentine, during that same period, the membership committee planned to recommend that John Moore's membership be revoked. When the committee notified Valentine of that recommendation, he determined that he would transfer his membership to Bryan–College Station. On November 23, 2010, Valentine notified Parsons that John Moore Services was resigning from the Houston BBB.

The trial court held an oral hearing on the motion to dismiss on June 27, 2014. The trial court did not rule on the motion within 30 days of the hearing, however, causing the motion to be overruled by operation of law on July 28, 2014. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.004(a). The Houston BBB filed this

interlocutory appeal from the denial of its motion to dismiss by operation of law.

After the motion to dismiss was overruled by operation of law, the trial court issued an order on August 11, 2014, purporting to grant the motion. The trial court also issued an August 8 order with rulings on the Houston BBB's objections to the second Valentine affidavit.[1]

## DISCUSSION

### I. Appellate Jurisdiction

█ The parties dispute the effect of the trial court's belated order granting the Houston BBB parties' motion to dismiss. Because this question implicates our jurisdiction to review the ruling under the TCPA, we consider whether Texas law confers intermediate appellate courts with jurisdiction over the appeal when a TCPA motion is overruled by operation of law and the trial court subsequently signs an order granting the motion outside the time permitted by the statute.

█ The TCPA's purpose is "to encourage and safeguard the constitutional rights of the persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. To that end, the TCPA provides a procedure for the expedited dismissal of retaliatory lawsuits that seek to intimidate or silence citizens on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex.2015); *see also Jain v. Cam-*

*bridge Petroleum Grp., Inc.*, 395 S.W.3d 394, 396–97 (Tex.App.—Dallas 2013, no pet.) ("The structure of the [TCPA] indicates a legislative intent for an expedited resolution of a defendant's assertion that a frivolous lawsuit has been filed against him in retaliation for the exercise of his constitutional right of free speech, right to petition, or right of association.") (footnote omitted). The quick route to appeal the statute prescribes ensures that a reviewing court considers whether the plaintiff's suit would chill a defendant's protected constitutional rights and the merit of claims implicating them near the inception of the case rather than later in the suit. The TCPA is intended to protect against suits that lack merit, but nonetheless chill a defendant's First Amendment rights merely by having to defend against them. *See NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.,* 745 F.3d 742, 748, 750 (5th Cir. 2014) (noting that nature of TCPA is akin to conferring immunity from suit where shown to apply) (citing *Batzel v. Smith,* 333 F.3d 1018, 1025 (9th Cir.2003)). If the elements for obtaining a dismissal have been met, then the TCPA safeguards the defendant's right to avoid the burdens of trial with the provision for an immediate review of an erroneous denial of the motion to dismiss, whether by the trial court's ruling or by operation of law. *See NCDR,* 745 F.3d at 750.

The Legislature's recent amendments to the Civil Practice and Remedies Code, requiring a stay of proceedings pending a final resolution of the defendant's TCPA motion, reinforce this right of appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12), (b) (West 2015); *see also*

---

1. John Moore cross-appeals the trial court's evidentiary rulings, contending that it erred in issuing them after the motion to dismiss was overruled by operation of law. The defendants respond that all of their objections to the evidence should have been sustained. Because our disposition does not turn on a ruling excluding any particular evidence from the Valentine affidavit, we need not reach the parties' challenges to the trial court's rulings on the evidence.

Statement of Intent, Tex. H.B. 2935, 83d Leg., R.S. (2013) (observing that courts of appeals came to different conclusions regarding right to appeal rulings on TCPA motions and explaining that amendment of section 51.014 of Civil Practice and Remedies Code clarifies legislative intent to provide for right of interlocutory appeal in all possible circumstances—when trial court grants or denies motion or when trial court fails to act within statutory period); *NCDR*, 745 F.3d at 748 (holding that district court's TCPA ruling was appealable under federal collateral order doctrine, meeting doctrinal requirements that it (1) conclusively determined disputed question, (2) resolved important issue completely separate from action's merits, and (3) would be effectively unreviewable on appeal from final judgment because, by having to defend against claims through trial, defendant would forfeit TCPA's protection from suit) (citing *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 171–78 (5th Cir.2009)).

The trial court's later order in this case, issued after the time for ruling on a motion to dismiss under the TCPA, does not divest our court of its jurisdiction to hear the issues in this interlocutory appeal. The Texas Rules of Appellate Procedure address our jurisdiction when the trial court has issued orders that affect a pending appeal. Rule 29.5 provides that a trial court's further orders may not "interfere[ ] with or impair[ ] the jurisdiction of the appellate court or effectiveness of any relief sought or that may be granted on appeal." Tex. R. App. P. 29.5(b). Rule 29.5 protects against any party's forfeiture of its appellate rights due to later events in the trial court, a risk presented when subsequent rulings may render an appealable interlocutory order unreviewable and leave a party to the appeal without a remedy. *See Dallas Morning News, Inc. v. Mapp*, No. 05–14–00848–CV, 2015 WL 3932868, at

*3 (Tex.App.—Dallas June 26, 2015, no pet.) (holding that trial court lacked authority to grant TCPA motion outside 30–day period following hearing, after it had been overruled by operation of law). Accordingly, when a trial court makes further orders we may review (1) "a further appealable interlocutory order concerning the same subject matter" as the order on appeal; and (2) "any interlocutory order that interferes with or impairs the effectiveness of the relief sought or that may be granted on appeal." Tex. R. App. P. 29.6(a). Thus, even though the trial court's later order granting the TCPA motion is not itself reviewable on interlocutory appeal, it does not deprive our court of its appellate jurisdiction if the order interferes with the relief sought in the appeal of that motion's prior denial by operation of law. *See id.* This is true even when the trial court unquestionably has jurisdiction to make further orders. *See* Tex. R. App. P. 29.5.

Here, the trial court's untimely ruling granting the motion is subject to challenge as outside the time for a ruling; thus, dismissal of this appeal presents the risk that the Houston BBB's request for appellate relief would be impaired in a subsequent appeal of that order. *See Direct Comm'l Funding, Inc. v. Beacon Hill Estates, LLC*, 407 S.W.3d 398, 401 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding that trial court has no jurisdiction to grant motion under TCPA beyond 30–day period allowed for ruling). In this case, for example, even if the trial court had jurisdiction to enter the order it did, it may have done so in error, because it was done outside the time for a ruling on a motion to dismiss under the TCPA.

Cognizant of the potential problems raised by this procedural posture, the Houston BBB appealed the denial by operation of law rather than relying on the

later order. As the Houston BBB observes, it could not obtain all of the appellate relief it seeks by merely relying on the later order, which granted the relief, but not in time, because that ruling is subject to challenge for procedural default. John Moore has raised just such a challenge in this case. Thus, the relief the BBB seeks is not ameliorated by the trial court's later order.

We hold that the trial court's untimely order granting Houston BBB's motion to dismiss under the TCPA does not deprive our court of its appellate jurisdiction to review the denial of a TCPA motion when it is overruled by operation of law. *See* Tex. R. App. P. 29.6(a); Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12); Tex. R. App. P. 29.6(a); *Mapp*, 2015 WL 3932868, at *3–4 (holding that operative ruling in TCPA appeal was overruling by operation of law); *see also E. Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex.2010) (noting in arbitration context, appellate jurisdiction must be construed in light of limitations on a trial court's authority; rejecting notion that appellate court's review of order denying confirmation of arbitration was unreviewable in the appellate court when trial court also directed a rehearing); *Coastal Corp. v. Garza*, 979 S.W.2d 318, 322 (Tex.1998) ("As careful as [a court] is not to exercise jurisdiction it does not have, it must be equally careful to exercise all the jurisdiction it does have....") (Hecht, J., dissenting). Thus, we turn to the merits of this appeal.

## II. Dismissal Under the TCPA

In this appeal, The Houston BBB contends that John Moore's second lawsuit should be dismissed under the TCPA based on the doctrines of res judicata and collateral estoppel. It observes that this case involves the same facts as *BBB I* and that John Moore filed essentially the same pleading in *BBB I*. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1). John Moore responds that the Houston BBB and the other defendants have failed to demonstrate that *BBB I* bars John Moore from bringing its claims and further, that (1) it has adduced clear and specific evidence for all of its claims; (2) the commercial speech exception to the TCPA applies; and (3) the TCPA is unconstitutional. We first determine whether the Houston BBB and the other defendants have borne their burden to demonstrate that *BBB I* bars this suit under the doctrines of either res judicata or collateral estoppel.

### A. Standard of Review

■ To obtain dismissal under the TCPA, a defendant must show "by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of the right of free speech; the right to petition; or the right of association." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). We review this determination de novo. *See BBB I*, 441 S.W.3d at 353 (citing *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80–81 (Tex.App.—Houston [1st Dist.] 2013, pet. denied).

Under the TCPA, the exercise of the right of free speech "means a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). A "matter of public concern," includes, among other things, "an issue related to a good, product, or service in the marketplace." *Id.* § 27.001(7)(E). If the movant meets its burden to show that a claim is covered by the TCPA, then to avoid dismissal of that claim, a plaintiff must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c).

Urging application of the doctrines of res judicata and collateral estoppel, the Houston BBB argues: (1) that the finding in the first suit that John Moore's legal action is based on, relates to, or was filed in response to the exercise of the right of free speech bars re-litigation of that issue in this second suit; and (2) that John Moore is barred from establishing "by clear and specific evidence a prima facie case for each element" of its claims in the second suit because these claims either were brought, or could have been brought, in the first suit.

## B. Res Judicata

■ Res judicata, broadly speaking, is the generic name for a group of related concepts concerning the preclusive effect of prior judgments. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). "Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Id.*; *Am. Int'l Indus., Inc. v. Scott*, 355 S.W.3d 155, 160 (Tex.App.—Houston [1st Dist.] 2011, no pet.). For res judicata to apply, the following elements must be present: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties in each action; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 86 (Tex. 2008); *Citizens Ins. Co. v. Daccach*, 217 S.W.3d 430, 449 (Tex.2007). This doctrine prohibits splitting a cause of action in order to "bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Barr*, 837 S.W.2d at 628.

■ Texas courts apply the transactional approach to res judicata, which requires that claims arising out of the same subject matter be litigated in a single lawsuit. *Hallco Tex., Inc. v. McMullen Cty.*, 221 S.W.3d 50, 58 (Tex.2006) (citing *Barr*, 837 S.W.2d at 631). Under this approach, we examine the factual bases, not the legal theories, presented in the cases to determine whether the cases share the same set of operative facts. *Samuel v. Fed. Home Loan Mortg. Corp.*, 434 S.W.3d 230, 234 (Tex.App.—Houston [1st Dist.] 2014, no pet.) (citing *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 496 (Tex. App.—Texarkana 2002, pet. denied)). In determining whether the facts arose out of a single transaction, we consider whether the facts are related in time, space, origin, or motivation, and whether they form a convenient unit for trial. *Id.* (citing *Barr*, 837 S.W.2d at 631).

### 1. Earlier final judgment on the merits

■ A dismissal with prejudice under the TCPA constitutes a final determination on the merits for res judicata purposes. *Cf. Harris Cty. v. Sykes*, 136 S.W.3d 635, 640 (Tex.2004) (holding that dismissal with prejudice based on plea to jurisdiction supports res judicata defense because it fully and finally adjudicates whether claims asserted, or those that could have been asserted, come within Texas Tort Claims Act's waiver of sovereign immunity); *Wolter v. Delgatto*, No. 14–05–00055–CV, 2006 WL 664214, at *3 (Tex.App.—Houston [14th Dist.] Mar. 16, 2006, no pet.) (holding that dismissal with prejudice for lack of standing was on merits and "the dismissed claims were finally determined"). John Moore does not dispute the existence of a prior final judgment on the merits in the initial suit, which arose out of the same facts and circumstances in this suit.

### 2. Identity of the parties

■ The second element, identity of the parties, does not require that the parties in both lawsuits be identical if the parties named in the subsequent action are in privity with a party to the prior judgment—that is, a party who is so connected with a party to the prior judgment that the party represented the same legal right. *See Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex.1971). For purposes of res judicata, this identity of interest exists when: (1) the person can control an action even if he is not a party to it; (2) the party to the prior action represented the person's interests; or (3) the person is a successor-in-interest to the party in the prior action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex.1996). To determine whether identity exists, we examine the circumstances of each case to identify whether the parties share any interests. *See Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800–01 (Tex.1992).

■ In addition to the Houston BBB, the second suit names as defendants Houston BBB President Parsons and members of the Houston BBB's board of directors, in both their official and individual capacities; the Houston BBB's Education Foundation; and Church Services, a local plumbing company owned by board member Church. With respect to the Houston BBB president and the board members, we apply the general rule that "the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex.1995); *see* Tex. Bus. Orgs. Code Ann. § 22.235 (West 2012) (providing that officer is not liable to any person for action taken or omission made in capacity as officer in good faith, with ordinary care, and in manner reasonably believed to be in nonprofit corporation's best interest).

For these defendants, we hold that the evidence establishes an identity of interest. John Moore has not asserted that the conduct of the board members in their official capacity does not satisfy section 22.235 of the Business Organizations Code. Although John Moore has sued the individual defendants in their individual capacities, its allegations in the suit against them arise out of their conduct as officers or directors of the Houston BBB; John Moore's contention is that these individuals committed fraud and conspired through their board membership and activities in the Houston BBB to unlawfully compete against John Moore. As board members, the individual defendants were in a position to control the positions taken by the Houston BBB in the first suit. Because the facts as alleged demonstrate an identity of interest between the Houston BBB in the first suit and its officers and directors named in the second suit, we conclude that these defendants have satisfied the identity of interest element.

■ With respect to the two remaining defendants—the Houston BBB Education Foundation and Church Enterprises, Inc.—the record does not address the requirement that they share an identity of interest with the Houston BBB, the only defendant in the first suit. These defendants did not become parties to the suit because the trial court struck John Moore's amended petition naming them as defendants. These defendants thus did not satisfy their burden to establish by a preponderance of the evidence that they either exerted control over the first action, had an adequate representative in the prior action, or are successors-in-interest to a defendant in the first action. *See Amstadt*, 919 S.W.2d at 653.

### 3. Claims that could have been raised

■ We next consider the third element—whether the claims in this action

are based on claims that were raised or could have been raised in the first action. John Moore's amended petition in *BBB I*, which the trial court struck, named the parties it has sued in this suit and alleged the causes of action that John Moore alleges in first suit. These pleadings presumptively demonstrate that John Moore could have added these parties and claims in *BBB I. See Hallco*, 221 S.W.3d at 60 (concluding that "res judicata bars another bite at the apple" after finding that all facts relevant to claims in second suit were evident in first suit).

■ Even though the requirements for applying res judicata are met, John Moore responds that the Houston BBB's conduct in *BBB I* prevented John Moore from bringing its new claims and adding parties; thus, it contends, res judicata should not apply as a matter of equity. It observes that, though it conducted discovery in *BBB I*, the Houston BBB successfully moved to strike John Moore's amended petition in *BBB I*, and it opposed John Moore's motion to consolidate this lawsuit with *BBB I* after *BBB I* was remanded to the trial court.

The record does not support the conclusion that John Moore was prevented from amending its pleadings in *BBB I* based on circumstances outside of its control. Before the Houston BBB sought the automatic stay, the parties actively pursued discovery and jointly asked the trial court to extend the discovery period and pleading amendment deadline. John Moore was not precluded from adding the claims it brings in this second suit before that extended deadline passed—while it still could amend its pleadings as a matter of right. John Moore did not seek to amend its suit until it lost the appeal in *BBB I*. The decision to forgo amendment of its pleadings until after the time for amending them as a matter of right had ended and

after an adverse ruling on appeal occurred was an obstacle unrelated to any litigation conduct of the Houston BBB.

■ A trial court has no discretion to refuse a pleading amendment unless the opposing party presents evidence of surprise or prejudice, or the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990). John Moore did not file its amended petition, however, until after this Court rendered judgment dismissing its suit and after the pleadings deadline set by the trial court's second docket control order. More importantly, in *BBB I*, John Moore did not appeal the trial court's order striking John Moore's amended pleadings, but instead appealed the trial court's denial of John Moore's consolidation of the two suits on the eve of entry of the final judgment. *See John Moore Servs.*, No. 01–14–00906–CV, slip op. at 18.

John Moore contends that the Houston BBB improperly argued for the imposition of a stay pending appeal in *BBB I* and that the trial court struck the amended pleading because the Houston BBB invoked the stay. While the appeal in *BBB I* was pending, the Legislature amended Chapter 51 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12), (b). When the amendments became effective, the Houston BBB argued for the automatic stay. *See id.* (declaring amendments effective as of June 13, 2013). As amended, section 51.014(a)(12) allows for an interlocutory appeal from a trial court order that "denies a motion to dismiss filed under section 27.003," and incorporates by reference a section 27.003 appeal into the list of interlocutory appeals subject to an automatic stay of trial court proceedings. *Id.* But

John Moore did not challenge the trial court's decision to strike the amended petition in the appeal of *BBB I*. Nor did it seek leave to amend on remand after the conclusion of the automatic stay. John Moore instead filed a second lawsuit altogether. It later moved to consolidate this case with *BBB I* on remand, but did not present the motion to the trial court until final judgment. As we have held in John Moore's appeal after remand of that suit today, the trial court did not err in denying consolidation of claims at that point in the proceedings. *See John Moore Servs.*, No. 01–14–00906–CV, 2016 WL 3162206, *8.

In essence, John Moore collaterally attacks the trial court's interim rulings in *BBB I* to avoid *BBB I's* preclusive effect in this suit. But the law of claim preclusion is that those challenges must be raised and litigated in the first proceeding—not in a subsequent suit brought after a party does not prevail in the trial court during the course of the first one.

John Moore relies on three cases for its contention that res judicata does not apply because Houston BBB's litigation strategy prevented John Moore from amending its petition in the first suit, but the facts in each of them are inapposite. In *Sysco Food Services, Inc. v. Trapnell*, a federal procedural requirement prevented the plaintiff from bringing its state law claims in federal court. 890 S.W.2d 796, 799 (Tex.1994). The Texas Supreme Court declined to apply res judicata based on the federal suit because the plaintiff had no control over the federal court's inability to assert jurisdiction over his state law claims. *Id.* at 805. Unlike the plaintiff's situation in *Sysco*, nothing in this case precluded John Moore from amending its petition before the trial court's pleadings deadline and before it suffered an adverse appellate ruling, or alternatively, from appealing the trial court's decision to strike

its amended petition in *BBB I*. This is not a case where Chapter 51's automatic stay of proceedings wholly precluded John Moore from the opportunity to amend its suit.

In the second case that John Moore relies on, *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, the trial court severed claims for attorney's fees and legal malpractice from a divorce case, so that the separate trials held for each led to final judgments. 697 S.W.2d 381, 383 (Tex. 1985). The Supreme Court held that the trial court did not abuse its discretion in severing the claims or in granting separate trials, but determined that "the res judicata effects of an action cannot preclude litigation of claims that a trial court explicitly separates or severs from that action." *Id.* at 384. In this case, however, the trial court did not sever any claims from the pending suit. Rather, John Moore unilaterally filed a new lawsuit after the trial court denied it leave to file an amended petition while *BBB I* remained on appeal.

John Moore's third case, *Finger v. Southern Refrigeration Services, Inc.*, 881 S.W.2d 890 (Tex.App.—Houston [1st Dist.] 1994, writ denied), is similarly inapposite. In *Finger*, we held that a party who advocated for the erroneous dismissal of a party from the suit could not rely on res judicata in a subsequent action between the parties. *Id.* at 896. In contrast, here the Houston BBB was defending claims brought against it; it did not advocate for the erroneous dismissal of a party. Rather, it sought and obtained dismissal for itself, against claims that arose from the same set of facts as the ones alleged against it in this suit.

Chapter 27 places parties on notice that, when claims arguably involve statements made in the exercise of the right of free speech or the right of association, the defending party may promptly file a motion

under the TCPA which, if successful, places the suit on a fast track for dismissal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b), (c). In those circumstances, the plaintiff must be mindful of the TCPA's potential impact on its claims and draft its petition accordingly. *See Lipsky*, 460 S.W.3d at 590 (observing that TCPA prescribes clarity and detail required to avoid dismissal and that "pleadings that might suffice in a case that does not implicate the TCPA may not be sufficient to satisfy the TCPA's 'clear and specific' evidence requirement"). The Legislature carefully balanced the procedural rights afforded to litigants against the constitutional rights the TCPA aims to protect. In this case, where the parties obtained discovery, and the case was pending in the trial court before and after the imposition of the automatic stay—a stay imposed after the pleadings deadline in the trial court—John Moore has not demonstrated that the Houston BBB's litigation strategy deprives it of a res judicata defense against subsequent suits between the same parties in interest and the same subject matter; thus bringing the dispute to a final resolution.

We hold that the Houston BBB, its president, and the board members have established the elements of res judicata. Accordingly, the claims against those defendants should be dismissed. Because the BBB Houston Education Foundation and Church Enterprises were not parties to the first suit and have not demonstrated an identity of interest with the parties in the first suit, we turn to the additional grounds for dismissal urged by the defendants in their motion to dismiss under the TCPA.

## C. Collateral Estoppel

■ We next consider whether collateral estoppel, or issue preclusion, applies to the remaining defendants, Church Enterprises and the BBB Houston Education Foundation. Collateral estoppel "prevents relitigation of particular issues already resolved in a prior suit." *Barr*, 837 S.W.2d at 628. It is narrower than res judicata, and "applies when an issue decided in the first action is actually litigated, essential to the prior judgment, and identical to an issue in a pending action." *Casa Del Mar Ass'n, Inc. v. Gossen Livingston Assocs., Inc.*, 434 S.W.3d 211, 219 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Tex. Capital Sec. Mgmt., Inc. v. Sandefer*, 80 S.W.3d 260, 264 (Tex.App.—Texarkana 2002, pet. struck).

■ To establish collateral estoppel, a party must demonstrate that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex.2002); *Sysco Food Serv.*, 890 S.W.2d at 801; *see also Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984) (holding that collateral estoppel bars re-litigation of any ultimate issue of fact actually litigated and essential to judgment in prior suit, regardless of whether second suit is based on same cause of action); RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").

■ A party in a subsequent suit may invoke collateral estoppel even if it did not participate in the first suit, if the party against whom collateral estoppel is asserted was either a party or in privity

with a party in the earlier litigation. *See Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex.1990). In *Mower v. Boyer*, the Texas Supreme Court held that an earlier adjudication of an issue has an estoppel effect if it was "adequately deliberated and firm." 811 S.W.2d 560, 562 (Tex.1991). Factors to consider in making this determination include (1) whether the parties were fully heard, (2) whether the court supported its decision with a reasoned opinion, and (3) whether the decision was subject to appeal or was in fact reviewed on appeal. *Id.*

▇▇▇ John Moore's pleadings allege that the defendants (1) deviated from the Houston BBB's established membership standards in changing John Moore's rating; (2) manipulated, misled, and conspired with the Houston BBB board and committee members into seeking revocation of John Moore's membership; (3) disregarded established board procedures to terminate John Moore's Houston BBB membership without a full board vote; (4) threatened John Moore to refrain from appealing the termination decision; and (5) conspired to contest John Moore's right to display the Houston BBB Awards for Excellence it had won in the past and pressured other regional BBBs into declining or revoking John Moore's headquarter status in other cities. The pleadings allege that Church Enterprises and the Houston BBB Education Foundation participated in the conspiracy.

▇▇▇ The second suit asserts causes of action not raised in first suit, including violations of state antitrust law, codified in the Texas Free Enterprise Act; breach of contract; unjust enrichment; violations of the Texas Deceptive Trade Practices Act; and conspiracy to violate the TFEA and the DTPA. But the second suit indisputably arises from the same nucleus of operative facts that gave rise to the first suit.

The third element of collateral estoppel is satisfied by a showing that "the party against whom the doctrine is asserted was a party or in privity with a party in the first action." *Neely v. Comm'n for Lawyer Discipline*, 976 S.W.2d 824, 827 (Tex. App.—Houston [1st Dist.] 1998, no pet.). John Moore brought both the first and second suits and thus was a party in both suits.

Our court in *BBB I* concluded that all of the claims in the first lawsuit were "based on, relate[d] to, or . . . in response to" the Houston BBB's exercise of its free speech rights, thereby satisfying TCPA section 27.005(b). *See BBB I*, 441 S.W.3d at 352–53. This court further held that the TCPA was not limited to speech directed toward governmental participation. *See id.*

The factual allegations in this case arise out of the same conduct that served as the basis for the claims in *BBB I*. Thus, the panel made an express finding on the merits as to the applicability of the TCPA to the facts alleged in both lawsuits. Similarly, in the first suit, as it does here, John Moore argued that the business exemption under TCPA section 27.010(b) prevented the TCPA from applying, but the panel opinion in *BBB I* expressly held that the exemption did not apply. *Id.* at 354. These findings were essential to the judgment dismissing John Moore's claims. Accordingly, we hold that these findings in *BBB I* apply to this case and bar relitigation of the applicability of the TCPA.

Because the court in *BBB I* heard and expressly rejected John Moore's challenges to the applicability of the TCPA, we hold that John Moore is collaterally estopped from asserting those same challenges in this suit. We further hold that its claims for fraud and equitable relief are collaterally estopped, because these claims were fully considered in *BBB I* and found against John Moore. *See BBB I*, 441

S.W.3d at 359 (rejecting fraud claim based on correspondence from Education Foundation).

### D. The TCPA and John Moore's Remaining Claims

At the outset, John Moore challenges the constitutionality of the TCPA, arguing that its requirement that a plaintiff adduce "clear and specific evidence" to avoid dismissal under the TCPA violates the Open Courts Provision of the Texas Constitution and its right to trial by jury. The Houston BBB defendants respond that the panel in *BBB I* expressly held that John Moore waived this issue; thus, John Moore is collaterally estopped from raising its constitutional challenge again in this suit. *See BBB I*, 441 S.W.3d at 352 n. 1 (noting that constitutional challenge "was waived due to failure to present it to the trial court"). The Houston BBB further argues that appellate courts have rejected the argument that the TCPA violates the Texas Open Courts Provision and, further, that Texas law makes clear that the right to a trial by jury is not absolute, but may be regulated by statute and rules of procedure. *See Black v. Jackson*, 82 S.W.3d 44, 55 (Tex. App.—Tyler 2002, no pet.) (affirming dismissal of plaintiff's claims for failure to satisfy procedural requirements implemented to limit frivolous lawsuits).

The BBB defendants cite no authority for the proposition that a finding of waiver of an issue can collaterally estop litigation of the waived issue in a subsequent proceeding. Thus, we examine the merits of John Moore's constitutional challenge. John Moore contends that the TCPA violates the Texas Constitution as applied to the facts of this case, contending that the requirement that it adduce "clear and specific" evidence is a higher burden than that required to counter a motion for summary judgment, because it does not allow for reasonable inferences and instead requires direct evidence to support a claim. Thus, it contends, this language deprives it of its right of access to the courts and to a trial by jury by imposing a higher burden of proof than allowed to prove a claim at trial.

During the pendency of this appeal, however, the Texas Supreme Court rejected that interpretation; it expressly held that the clear and specific evidence standard under the TCPA does not require direct evidence of each essential element of the underlying claim to avoid dismissal, but instead the evidence may encompass circumstantial evidence and rational inferences. *See Lipsky*, 460 S.W.3d at 591 ("Though the TCPA initially demands more information about the underlying claim, the Act does not impose an elevated evidentiary standard or categorically reject circumstantial evidence. In short, it does not impose a higher burden of proof than that required of the plaintiff at trial."). Accordingly, we reject John Moore's constitutional challenge.

With respect to its remaining claims against the Education Foundation and Church Services, John Moore must adduce clear and specific evidence to support each element of its claims in response to the motion brought under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). We address each of the remaining claims in turn.

### 1. Breach of contract, unjust enrichment, and detrimental reliance

A breach of contract claim requires the existence of an enforceable contract with definite terms. *See T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992). John Moore does not identify any evidence of an agreement between it and either the Houston BBB, its Education Foundation, or Church Services, or any material terms of any

enforceable contract. Further, the court in *BBB I* rejected John Moore's contention that it detrimentally relied on any promises made by the Education Foundation. *See* 441 S.W.3d at 359–60 (rejecting contention that letter from Education Foundation resulted in any actionable fraud or detrimental reliance). John Moore is collaterally estopped from challenging that finding in this suit, and it was essential to the judgment in *BBB I* dismissing John Moore's fraud claim. Because John Moore has not adduced evidence to support its breach of contract, unjust enrichment, or detrimental reliance claims, we hold that they are properly dismissed under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

## 2. DTPA

■■■ John Moore alleges that the Education Foundation and Church Services, together with the other defendants, conspired to commit violations of the DTPA, by causing "confusion and misunderstanding by authorizing [John Moore] to display and advertise the BBB Awards for Excellence and then retrospectively applying a rule change prohibiting said display and advertisement." The specific allegations against the Education Foundation are that its executive director authorized John Moore to "prominently display the [BBB] Award for Excellence name and logo on all of John Moore's mediums of advertising" and "encouraged award recipients to prominently advertise its name and logo in order to increase the interest of local businesses and consumers in its awards competition." As a result, John Moore contends, it spent "millions of dollars advertising with the Awards of Excellence."

As the defendants note, however, Valentine's affidavit in the federal court lawsuit evidences his agreement to discontinue use of the BBB trademark and logo to obtain dismissal of that suit; John Moore proffers no evidence that its *removal* of the BBB trademark and logo to end the federal court suit caused confusion about the sponsorship or approval of John Moore's services. Ultimately, John Moore itself agreed to remove the BBB logo and trademark from John Moore's advertising. Thus, we conclude that John Moore did not adduce evidence in support of its claim under the DTPA that either of these defendants caused or conspired to cause a violation of the sponsorship and approval provisions of the DTPA. *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(2) & (5) (West Supp.2015). In addition, John Moore does not direct us to any evidence that it is a "consumer" who sought to acquire goods by purchase or lease, as required by the DTPA. *Id.* § 17.45(4). Accordingly, we hold that its DTPA claim is properly dismissed under the TCPA.

## 3. State Law Antitrust Claims and the Texas Free Enterprise Act

John Moore has pleaded (1) restraint of free trade in violation of the Texas Free Enterprise Act Section 15.05(a); and (2) conspiracy to monopolize and attempted monopolization in violation of section 15.05(b). *See id.* § 15.05(a), (b) (West 2011). Section 15.05(a) provides: "Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful." *Id.* § 15.05(a). Section 15.05(b) provides: "It is unlawful for any person to monopolize, attempt to monopolize, or conspire to monopolize any part of trade or commerce." *Id.* § 15.05(b).

■■■ Under the Act, a plaintiff may sue if its business or property has been injured by reason of any conduct declared unlawful under the Act. *See id.* In other words, a plaintiff must demonstrate standing to sue with evidence of (1) an injury to the plaintiff proximately caused by the defendant's

unlawful conduct; (2) antitrust injury; and (3) that it is the proper plaintiff to challenge the anticompetitive behavior. *See In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 709 (Tex.2015). In this case, John Moore pleaded that it incurred "damages to business or property as John Moore was unable to provide services to potential customers.... In other words, John Moore had fewer sales and less profits than it otherwise would."

■ In its brief, John Moore contends that the Houston BBB violated section 15.05(a) by forming a trade association that (1) restrained trade in the markets for home repair and renovation and for trade association memberships and services; and (2) imposed a "horizontal non-price restraint" by isolating John Moore from its competitors. It contends that the Houston BBB's business reviews and ratings reflect its business for "trust" and that it "lends that trust to businesses by giving those businesses positive reviews and ratings under its trademark." Thus, it contends, the "tying product is consumer trust in the Houston BBB trademark," which it ties with membership in the Houston BBB.

John Moore's briefing does not specifically address Church or the Education Foundation. In its petition, John Moore alleges that Church Services and the Education Foundation "unlawfully conspired" with the Houston BBB and the other defendants to prevent John Moore from "becom[ing] a member of and receiv[ing] ratings from any Better Business Bureau other than the Houston BBB" for the improper purpose of damaging John Moore's ability to compete "in the home repair and renovation market so that its competitors (specifically Church Enterprises) could gain market share without competing on an even playing field." But John Moore points to no evidence supporting its claim there was any agreement to restrain trade

in violation of Section 15.05(a). *See Aquatherm Indus. Inc. v. Fla. Power & Light Co.*, 145 F.3d 1258, 1262 (11th Cir. 1998) ("It is fundamental that a plaintiff establish an *agreement* between two or more persons to restrain trade; unilateral conduct is not prohibited ...."); *see also Mem'l Hermann*, 464 S.W.3d at 708–09 (noting that federal antitrust law informs application of Texas Free Enterprise Act). John Moore adduces no evidence of anticompetitive conduct by the Houston BBB to require others to follow its recommendations regarding local businesses; ratings without constraints that require others to base market decisions on them are not evidence of a restraint of trade. *Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 846 F.2d 284, 292 (5th Cir.1998) ("A trade association that evaluates products and issues opinions, without constraining others to follow its recommendations, does not per se violate section 1 when, for whatever reason, it fails to evaluate a product favorably to the manufacturer.").

In addition, John Moore does not point to any evidence of injury or damage that it sustained—that it suffered a loss in market share or any adverse effect because it stopped using the BBB trademark in its advertising and was no longer a member of the organization. Regarding damages, John Moore's brief states: "Indeed, without membership and facing scathing reviews and an 'F' rating, John Moore's call volume (and associated revenue) fell 13%." But John Moore offers no evidence that its lack of membership or negative rating caused its decline in call volume or that the Houston BBB ratings affected John Moore's share of the Houston market. It also does not offer evidence that the Houston BBB's alleged restraint of trade had any adverse effect on competition for home services in the Houston market. *See De-Santis v. Wackenhut Corp.*, 793 S.W.2d

670, 688 (Tex.1990) (no violations of state antitrust law when plaintiff offered no evidence of relevant market or anticompetitive effect in that market). Because John Moore has not directed us to any evidence of a restraint that required consumers or others to heed the Houston BBB's ratings or of any antitrust injury that it sustained as a result of the conspiracy, nor to any evidence of adverse effect on competition in the Houston market, either among entities that promote consumer ratings or among home services companies, we hold that dismissal was appropriate under the TCPA.

■■■■ John Moore's claim under section 15.05(b) fails for similar reasons. On appeal, it limits its claim to attempted monopolization. To prove a claim of attempted monopolization, a plaintiff must show: (1) that the defendant has engaged in predatory or anticompetitive conduct; (2) a specific intent to monopolize; and (3) a dangerous probability of achieving monopoly power. See Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456, 113 S.Ct. 884, 890–91, 122 L.Ed.2d 247 (1993).

John Moore alleges that the Education Foundation and Church Services engaged in a conspiracy that attempted to monopolize "the market[ ] for consumer trust, for membership in similar trade organizations, and for mediation of consumer complaints (by the Houston BBB) and in the market for home repair and renovation services (by Church Enterprises)." John Moore offers no parameters of these markets or any evidence of relative market share for any of them. John Moore claims that Chris Church "was a key player in convincing the Membership Committee to revoke John Moore Renovation's membership," pointing to an email from Church in which Church states, "I truly will help in this situation, I see the issue," and "I have some thoughts on not only solving this problem but also keep[ing] this from occurring in the future."

■■■■ Evidence of Church's opposition to John Moore's membership in the Houston BBB, however, is not tantamount to evidence of participation in a conspiracy to monopolize a market. Evidence of ill will among competitors, without more, is not evidence of anticompetitive behavior. See Aquatherm, 145 F.3d at 1262; Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 225, 113 S.Ct. 2578, 2589, 125 L.Ed.2d 168 (1993) ("Even an act of pure malice by one business competitor against another does not, without more, state a claim" under the antitrust laws). John Moore also relies on the BBB's decision to cancel its advertising cooperative because that decision "made small businesses less competitive." John Moore, however, cites no authority for the proposition that a nonprofit must provide an advertising cooperative or else will have engaged in anticompetitive conduct. Nor does John Moore attempt to quantify the markets that it defines, the participants in those markets, or the market share of any participant. It has not adduced evidence of any decrease in its own market share. Accordingly, we hold that John Moore has not adduced evidence of any predatory intentional conduct that has resulted in a dangerous possibility of monopoly power residing in the Houston BBB.

For these reasons, we hold that John Moore has not adduced clear and specific evidence of its claims against the Houston BBB Education Foundation and Church Services for a conspiracy to violate the TFEA.

## CONCLUSION

We hold that the TCPA requires dismissal of John Moore's claims against the Houston BBB, its president, and its board, as barred by res judicata, and the claims

against Church Enterprises and the Houston BBB Education Foundation as barred by collateral estoppel or because evidence is lacking as to one or more elements. We therefore reverse the automatic denial of the motion to dismiss by operation of law and remand the case to the trial court for the trial court to award court costs, reasonable attorney's fees, and other expenses incurred by the appellants in defending themselves against John Moore's legal action, and impose sanctions on John Moore as the trial court determines sufficient to deter John Moore from bringing similar actions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a).

Justice Massengale, dissenting.

Michael Massengale, Justice, dissenting.

The trial court in this case *granted* the TCPA motion to dismiss. Our court now enters an appellate judgment of *reversal* in this interlocutory appeal, and concludes ... the trial court should have *granted* the TCPA motion to dismiss.

In contrast to a flawed interpretation of the TCPA in *Direct Commercial Funding v. Beacon Hill Estates, LLC*, 407 S.W.3d 398 (Tex.App.—Houston [14th Dist.] 2013, no pet.), I would hold that the trial court appropriately exercised its plenary authority to revise interlocutory trial rulings when it granted the motion to dismiss. As a result, this interlocutory appeal which seeks the very same relief—a dismissal pursuant to the TCPA—is moot.

Because our court incorrectly exercises interlocutory appellate jurisdiction to reverse the interlocutory denial of the motion by operation of law—which the trial court already had reversed by revising the ruling—I respectfully dissent. The TCPA

simply does not require this wasteful, duplicative, and time-consuming exercise.

## I

The Texas Citizens Participation Act, Tex. Civ. Prac. & Rem. Code §§ 27.001–.011 (TCPA), provides that if a trial court does not rule on a motion to dismiss within 30 days of the hearing, the motion is denied by operation of law. Tex. Civ. Prac. & Rem. Code § 27.008(a). When that happens, the movant may appeal. *Id.* §§ 27.008(a), 51.014(a)(12). But the movant is not required to appeal, nor is it required to appeal instantaneously. The movant has 20 days within which to file a notice of interlocutory appeal.[1] If the unsuccessful TCPA movant chooses to file a notice of interlocutory appeal, that action "stays the commencement of a trial in the trial court" and it "also stays all other proceedings in the trial court pending resolution of that appeal." *Id.* § 51.014(b). But the statutory stay of the trial court's plenary power does not apply unless or until the initiation of the interlocutory appeal. *See id.*

In this case, the trial court held a hearing on the Bureau's TCPA motion to dismiss on June 27, 2014. After hearing the arguments of counsel, the court advised the parties of its intention to read their voluminous filings, including the motion, responses, and objections related to the motion to dismiss. Alluding to the 30–day statutory deadline for a ruling, the trial judge stated:

I will try and rule as fast as I can. I know there is a statutory deadline. I will do my very best. But I hope you will just indulge me that you understand I want to read everything and make sure I am making an informed decision, whichever way I go, and I'm not just,

---

[1]. Tex. R. App. P. 26.1(b). The TCPA previously permitted an appeal to be filed within 60 days of the ruling, but that provision was repealed effective June 14, 2013. Act of May 24, 2013, 83rd Leg., R.S. Ch. 1042, Sec. 5, 2013 Tex. Gen. Laws 2502.

you know, flipping a coin or just trying to meet a deadline. So thank you for all of that.

The court did not rule before the 30–day statutory deadline, and the motion to dismiss was denied by operation of law on July 28, 2014. *See id.* § 27.008(a).

Perhaps aware of the 20–day window to file a notice of appeal and the trial judge's comments about his desire to make an "informed decision," the Bureau did not file its notice of appeal the next day. It waited. And on August 11, 2014, the trial court ruled, granting the Bureau's motion to dismiss.

Despite prevailing on its motion, the Bureau nevertheless filed a notice of interlocutory appeal from the July 28 denial of its motion which had occurred by operation of law. Why? Under *Direct Commercial Funding*, a recent and possibly controlling authority from another intermediate appellate court with coterminous appellate jurisdiction over the district court,[2] the trial

court's August 11 order may have been treated as a nullity because it was entered after the 30–day period specified by the TCPA. Out of an abundance of caution, the Bureau filed this interlocutory appeal from the earlier denial of its motion to dismiss by operation of law.[3]

## II

Generally, appeals may be taken only from final judgments. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001). Interlocutory orders may be appealed only if authorized by statute. *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex.2001). The Texas Civil Practice and Remedies Code authorizes an interlocutory appeal from an order that denies a TCPA motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003, 51.014(a)(12). But "no statute expressly provides for interlocutory appeal of an order that grants such a motion." *Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 887 (Tex.App.—Houston [1st Dist.] 2015, no pet.).[4]

---

**2.** The applicability of *Direct Commercial Funding*, which the Bureau contends was wrongly decided, was an unknown variable. Litigants in Harris County and the nine other counties that constitute the First and Fourteenth Judicial Districts do not know which appellate court will have jurisdiction over an appeal until after filing a notice of appeal. *See* TEX. GOV'T CODE § 22.202(h). The litigants in this appeal reasonably may have expected an appeal to be heard by the First Court of Appeals due to the assignment of a prior related appeal to this court, *see* 1st Tex.App. (Houston) Loc. R. 1.3(b), but they could not have known with certainty whether this court would adopt the Fourteenth Court's reasoning in *Direct Commercial Funding*. For a discussion of this peculiar feature of appellate jurisdiction over some Texas counties and some of its undesirable consequences, see generally Kem Thompson Frost, *Predictability in the Law, Prized Yet Not Promoted: A Study in Judicial Priorities*, 67 Baylor L.Rev. 48 (2015).

**3.** After the Bureau filed its notice of interlocutory appeal, the trial court signed an order

staying further proceedings in the case. The court explained that its order granting the motion to dismiss was entered 14 days after the statutory deadline due to the volume of material the parties filed (a combined total of 1,601 pages) and a "busier-than-normal" month. The order detailed what the court was doing during the 30–day window for ruling on the motion to dismiss, including: (1) three jury trials; (2) a three-day bench trial; (3) 129 motions set for submission with or without oral hearing; and (4) 254 uncontested motions or requests. The court also noted that it was in trial for a total of 14 days and had no support in the form of a briefing attorney, law clerk, or associate judge.

**4.** To the extent the court relies on a legislator's statement of intent for the proposition that the "legislative intent" of section 51.014(a)(12) of the Civil Practice and Remedies Code is "to provide for a right of interlocutory appeal in all possible circumstances," this court has rejected the relevance of that particular artifact of legislative history in both *Paulsen v. Yarrell*, 455 S.W.3d 192,

In this case, the motion to dismiss was denied by operation of law on July 28, but then it subsequently was granted by a written order signed on August 11. Under the statute, only the July 28 denial of the motion to dismiss is potentially reviewable by interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003, 51.014(a)(12); *Schlumberger,* 472 S.W.3d at 887. No party has attempted to appeal the August 11 order granting the motion to dismiss.

Our interlocutory jurisdiction hinges on what effect the August 11 order had on the July 28 denial by operation of law. If the trial court lacked the authority to enter the August 11 order,[5] then the July 28 denial of the motion to dismiss by operation of law continued to be appealable. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003, 51.014(a)(12). But if the trial court had power to enter the August 11 order granting the motion to dismiss, then the appealable order was effectively nullified. *See Hernandez v. Ebrom,* 289 S.W.3d 316, 319 (Tex.2009) ("Appeals of some interlocutory orders become moot because the orders have been rendered moot by subsequent orders."). Thus no interlocutory appeal would be permitted by law. *See Schlumberger,* 472 S.W.3d at 887. Accordingly, to resolve whether this court has jurisdiction over this appeal, we must determine the effect of the August 11, 2014 order.

**A**

In general, a trial court retains plenary power over its interlocutory orders until a final judgment is entered. *Fruehauf Corp.*

*v. Carrillo,* 848 S.W.2d 83, 84 (Tex.1993). "A trial court's plenary jurisdiction gives it not only the authority but the responsibility to review any pre-trial order upon proper motion." *In re Baylor Med. Ctr. at Garland,* 280 S.W.3d 227, 231 (Tex.2008); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex.1985). As such, a trial court has the inherent authority to change, modify, or set aside an interlocutory order at any time before the expiration of its plenary power. *See Fruehauf,* 848 S.W.2d at 84; *see also In re Burlington Coat Factory Warehouse of McAllen, Inc.,* 167 S.W.3d 827, 831 (Tex.2005); *Fabio v. Ertel,* 226 S.W.3d 557, 562 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Lakota Res., Inc. v. Pathex Petroleum, Inc.,* No. 01–07–00369–CV, 2008 WL 3522253, at *2 (Tex.App.—Houston [1st Dist.] Aug. 14, 2008, no pet.) (mem.op.).

*Fruehauf Corp. v. Carrillo,* 848 S.W.2d 83 (Tex.1993), posed a question of whether a court erred by granting a motion for new trial 74 days after the judgment, but vacating that order and denying the motion for new trial the following day. *Fruehauf,* 848 S.W.2d at 83–84. The Supreme Court held that the trial court acted properly because the granting of the motion for new trial extended the court's plenary power. *Id.* at 84. The Court stated:

A trial court has plenary power over its judgment until it becomes final. *Mathes v. Kelton,* 569 S.W.2d 876, 878 (Tex. 1978); *Transamerican Leasing Co. v. Three Bears, Inc.,* 567 S.W.2d 799, 800 (Tex.1978). The trial court also retains

196 (Tex.App.—Houston [1st Dist.] 2014, no pet.), and *Schlumberger Ltd. v. Rutherford,* 472 S.W.3d 881, 887–89 (Tex.App.—Houston [1st Dist.] 2015, no pet.).

5. *See, e.g., Direct Commercial Funding, Inc. v. Beacon Hill Estates, LLC,* 407 S.W.3d 398, 401 (Tex.App.—Houston [14th Dist.] 2013, no pet.); *Dallas Morning News, Inc. v. Mapp,* No.

05–14–00848–CV, 2015 WL 3932868, at *3 (Tex.App.—Dallas June 26, 2015, no pet.); *see also Avila v. Larrea,* 394 S.W.3d 646, 656 (Tex.App.—Dallas 2012, pet. denied) (observing that "there is no provision for extension of the thirty-day period in section 27.005(a)," but not actually holding that a trial court is therefore powerless to rule after day 30).

continuing control over interlocutory orders and has the power to set those orders aside any time before a final judgment is entered. *Texas Crushed Stone Co. v. Weeks,* 390 S.W.2d 846, 849 (Tex.Civ.App.—Austin 1965, writ ref'd n.r.e.). An order granting a new trial is an unappealable, interlocutory order. *B.F. Walker, Inc. v. Chaney,* 446 S.W.2d 896, 897 (Tex.Civ.App.—Amarillo 1969, writ ref'd n.r.e.). Denying the trial court the authority to reconsider its own order for new trial during the 75-day period *needlessly restricts the trial court, creates unnecessary litigation, and is inconsistent with the notion of inherent plenary power vested in the trial courts.*

*Id.* at 84 (emphasis supplied). Thus, because the trial court in *Fruehauf* retained plenary power, it did not act improperly by vacating its order granting a new trial. *Id.*

John Moore argues for the application of an exception to the general rule, relying on *Direct Commercial Funding* for its argument that the trial court lacked authority to grant the Bureau's motion to dismiss on August 11. In *Direct Commercial Funding,* the trial court granted the defendant's TCPA motion to dismiss 72 days after the hearing on the motion. *Direct Commercial Funding,* 407 S.W.3d at 400. The Fourteenth Court of Appeals concluded that the text of the TCPA did not authorize a court to grant a motion to dismiss more than 30 days after the hearing. *Id.* at 401 (discussing TEX. CIV. PRAC. & REM. CODE §§ 27.003—.005). In reaching this conclusion, the court of appeals considered the language of the statute and provisions of the Texas Rules of Civil Procedure that it found analogous. *Id.* at 402.

The TCPA provides that a party may file a motion to dismiss a legal action which is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." TEX. CIV. PRAC. & REM. CODE § 27.003(a). Although such a motion "must be filed" within 60 days of service of the legal action, the statute expressly authorizes a trial court to "extend the time to file a motion" to dismiss "on a showing of good cause." *Id.* § 27.003(b). In a similar way, the TCPA requires a hearing on the motion to dismiss to be set within 60 days of service of the motion, but the statute expressly authorizes an extension of up to 90 days from service of the motion due to docket conditions of the court, a showing of good cause, or agreement of the parties. *Id.* § 27.004(a). The statute also expressly authorizes an extension of time for the hearing of up to 120 days from service of the motion if discovery is necessary. *Id.* § 27.004(c).

A trial court is required to rule on a TCPA motion to dismiss within 30 days from the date of hearing on the motion. *Id.* § 27.005(a). Unlike the provisions addressing the time for filing the motion or holding a hearing, the provision addressing the court's ruling on a motion to dismiss does not expressly authorize a trial court to extend the time for ruling on a motion to dismiss. *Id.*

Considering these statutory provisions together, the Fourteenth Court concluded that in enacting the TCPA, the Legislature deliberately distinguished between "extendable deadlines" and "firm deadlines." *Direct Commercial Funding,* 407 S.W.3d at 401. The court stated:

> The distinction drawn by the legislature between extendable deadlines and firm deadlines—and more particularly, the mandatory deadline that applies to the trial court's authority to rule on a motion to dismiss—would be meaningless if the trial court, acting sua sponte, could

reverse the consequences imposed by statute for failure to timely act.

*Id.*

The *Direct Commercial Funding* opinion also drew analogies from Rules 165a and 329b of the Texas Rules of Civil Procedure, which specifically allow a court to grant a motion to reinstate a case that has been dismissed for want of prosecution, a motion for new trial, or a motion to vacate, modify, correct, or reform a judgment after such motions have been denied by operation of law. *Id.* at 402 (discussing TEX. R. CIV. P. 165a & 329b). The court compared the TCPA to Rules 165a and 329b, and it observed: "Unlike these procedural rules, the Citizens Participation Act contains no analogous provision empowering the trial court to grant a motion to dismiss after it has been overruled by operation of law." *Id.* Thus, because the TCPA does not expressly authorize a court to grant a motion to dismiss more than 30 days after the hearing, the Fourteenth Court of Appeals held that the trial court was "not authorized to grant a motion to dismiss under the Act more than 30 days after the hearing on the motion." *Id.*

I respectfully disagree with the statutory analysis in *Direct Commercial Funding.* Section 27.005 pertains to a ruling on a motion to dismiss, and it provides in relevant part that the court "must rule" within 30 days of the hearing and that the court "shall dismiss" a legal action when the movant meets his burden and the non-

movant fails to meet his burden. *See* TEX. CIV. PRAC. & REM. CODE § 27.005. When used in statutes, both "shall" and "must" are ordinarily construed as creating mandatory obligations. *Tex. Dept. of Pub. Safety v. Shaikh,* 445 S.W.3d 183, 187 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001)).

But "mandatory statutory duties are not necessarily jurisdictional." *Crosstex Energy Services, L.P. v. Pro Plus, Inc.,* 430 S.W.3d 384, 391 (Tex.2014) (citing *Helena Chem.,* 47 S.W.3d at 494). "We resist classifying a provision as jurisdictional absent clear legislative intent to that effect." *Id.* In the absence of an express statutory deprivation of the trial court's power to rule, I would not interpret the directive that the trial court "must rule" within 30 days as a deprivation of the trial court's jurisdiction to revise the ruling later. The plain text of the TCPA is sufficient to resolve this question. The statute does not purport to alter the general rule that a trial court retains plenary power over interlocutory orders until the entry of final judgment.[6] There are statutory consequences for failure to rule within 30 days, but they do not include a jurisdictional bar. The statute simply provides: "the motion is considered to have been denied by operation of law and the moving party may appeal." TEX. CIV. PRAC. & REM. CODE § 27.008(a). These specific consequences are not incompatible with the general rule

---

**6.** *See Fruehauf,* 848 S.W.2d at 84. When the *Direct Commercial Funding* court examined the statute, it noted the absence of any provision specifically authorizing the court to grant a motion to dismiss more than 30 days after the hearing and concluded that the court was not authorized to do so. *Direct Commercial Funding,* 407 S.W.3d at 402. My analysis reaches the opposite conclusion. No provision specifies that the 30–day deadline for ruling on a motion to dismiss deprives the

court of any power it otherwise would have following entry of an interlocutory order. *Cf. In re Brehmer,* 428 S.W.3d 920, 921 (Tex. App.—Fort Worth 2014, orig. proceeding). I would not read additional terms into the statute that are absent from what was enacted by the Legislature in order to create a jurisdictional bar. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 659 (Tex.1995).

that a trial court retains power to revise its interlocutory rulings.[7]

I would hold that the requirement that the court rule on a TCPA motion to dismiss within 30 days of the hearing is not jurisdictional. The denial of the Bureau's motion to dismiss was an interlocutory order, subject to the ongoing control and continuing plenary power of the trial court. *See Fruehauf,* 848 S.W.2d at 84. As such, I would hold that the court retained jurisdiction to enter an order granting the Bureau's motion so long as its plenary power continued.

**B**

In reaching the opposite conclusion, this court accepts the *Direct Commercial Funding* rule as a given, despite the fact that the Bureau argues the case was incorrectly decided, and our interlocutory appellate jurisdiction hinges on it.[8] Rather than directly addressing this unsettled legal issue and its jurisdictional consequence

of mootness, the court merges two distinct facets of Appellate Rule 29 to justify the exercise of appellate jurisdiction. The court observes that "Rule 29.5 provides that a trial court's further orders may not 'interfere[ ] with or impair[ ] the jurisdiction of the appellate court or effectiveness of any relief sought or that may be granted on appeal,' " TEX. R. APP. P. 29.5(b), and also that "when a trial court makes further orders, we may review (1) 'a further appealable interlocutory order concerning the same subject matter' as the order on appeal; and (2) 'any interlocutory order that interferes with or impairs the effectiveness of the relief sought or that may be granted on appeal.' " TEX. R. APP. P. 29.6(a). Simply put, these provisions of Rule 29 have no application to this case or to TCPA appeals in general.

Rule 29.5 ("Further Proceedings in Trial Court") applies to permit "further" interlocutory trial court orders to be made "[w]hile an appeal from an interlocutory

---

**7.** To the extent it matters, *see Crosstex Energy Services, L.P. v. Pro Plus, Inc.,* 430 S.W.3d 384, 392 (Tex.2014), a jurisdictional bar does not advance the enacted statement of the TCPA's purpose, "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. Instead of facilitating a prompt dismissal, treating the 30–day deadline as jurisdictional only forces the parties into an unnecessary ancillary track of interlocutory appellate litigation like the one before us. *Cf. Fruehauf,* 848 S.W.2d at 84 (avoiding needless restriction on the trial court which would create unnecessary litigation and be inconsistent with the notion of inherent plenary power vested in the trial courts). Instead of allowing the trial court to correct its own error by dismissing the case before the movant invokes the right of appeal and associated stay of proceedings (which efficiently can be accom-

plished by a one-line order granting the motion), such an interpretation forces the parties to relitigate the issue before an appellate court, which is obliged to write a full-blown opinion explaining its reasoning. *See* TEX. R. APP. P. 47.1. In the event of a reversal, all that is accomplished is that the trial court is compelled to do something it otherwise could have done on its own much more efficiently, as the trial court in this case attempted to do. Nothing in the TCPA suggests the Legislature intended to require such an inefficient process. As such, neither judicial economy nor the purpose of the statute are served by reading into the statute an exception to the general rule of continuing plenary power over interlocutory orders.

**8.** *See Hernandez v. Ebrom,* 289 S.W.3d 316, 319 (Tex.2009) ("Appeals of some interlocutory orders become moot because the orders have been rendered moot by subsequent orders."); *State Bar of Texas v. Gomez,* 891 S.W.2d 243, 245 (Tex.1994) ("Subject matter jurisdiction requires ... that there be a live controversy between the parties; .... ").

order is pending . . . unless prohibited by statute." Tex. R. App. P. 29.5. In the case of TCPA interlocutory appeals, such further orders are prohibited by statute. Tex. Civ. Prac. & Rem. Code § 51.014(b). Thus the scope of Rule 29.5 does not include the August 11 order, which was issued when no interlocutory appeal was pending.[9] I have no disagreement with the court's observation that Rule 29.5 "protects against any party's forfeiture of its appellate rights due to later events in the trial court," except to note that the rule is inapplicable to this appeal by its own terms, because the August 11 order was not a "later event in the trial court" with respect to this appeal—it was a *prior* event in the trial court which properly factors into our evaluation of whether the interlocutory appeal was moot on arrival. As such, the August 11 order cannot be considered to violate Rule 29.5(b)'s prohibition against "further orders" interfering with or impairing our appellate jurisdiction. *See* Tex. R. App. P. 29.5(b).

The other provision, Rule 29.6 ("Review of Further Orders") permits interlocutory review of two categories of interlocutory trial court orders ancillary to one that has been appealed. First, we may review "a further appealable interlocutory order concerning the same subject matter." Tex. R. App. P. 29.6(a)(1). That category is inapplicable to this appeal because an order granting a TCPA motion to dismiss, such

as the August 11 order, is not an "appealable interlocutory order." *Schlumberger*, 472 S.W.3d at 887. Second, we may review "any interlocutory order that interferes with or impairs the effectiveness of the relief sought or that may be granted on appeal." Tex. R. App. P. 29.6(a)(2). This is the category the court appears to invoke by its reasoning that the Bureau "could not obtain all of the appellate relief it seeks by merely relying on the later order" which "is subject to challenge for procedural default." But the court does not actually rely on Rule 29.6(a)(2) to justify exercising jurisdiction over a "further order," as it concedes the August 11 order "is not itself reviewable on interlocutory appeal."

Instead of exercising any power under Rules 29.5 or 29.6, the real crux of the court's reasoning is its assertion that the August 11 order should not be considered to "divest our court of its jurisdiction" over reviewing the denial of the motion to dismiss by operation of law. However, the Supreme Court already has acknowledged that an interlocutory appeal may be mooted by a subsequent order. *See Hernandez*, 289 S.W.3d at 319. That is what has happened in this appeal. After the trial court in this case entered its order granting the TCPA motion to dismiss, the Bureau did not want or need this interlocutory appeal.[10] The Bureau already had

---

**9.** This procedural fact distinguishes the case of *Dallas Morning News, Inc. v. Mapp*, No. 05–14–00848–CV, 2015 WL 3932868 (Tex. App.—Dallas June 26, 2015, no pet.), in which a TCPA motion to dismiss was denied by operation of law, the movant filed notice of an interlocutory appeal, and the trial court subsequently purported to enter a final judgment dismissing the case pursuant to the TCPA. The court of appeals in that case found Rule 29.5 to be inapplicable, but for a different reason—that under the reasoning of *Direct Commercial Funding*, "the trial judge took an act prohibited by statute when she

signed an order outside the statutorily mandated time period." 2015 WL 3932868 at *3. For the reasons discussed above, I disagree with this interpretation of the TCPA.

**10.** The Bureau stated in its statement of jurisdiction that it "had no choice but to file this interlocutory appeal based on the Fourteenth Court of Appeals' decision in *Direct Commercial Funding v. Beacon Hill Estates, LLC*, 407 S.W.3d 398, 401 (Tex.App.—Houston [14th Dist.] 2013, no pet.)." Appellants' Brief at xiii. The Bureau nevertheless stated that "the *Direct Commercial* decision was incorrectly

obtained the relief it sought: dismissal. The same logic would apply to any other case in which a TCPA motion to dismiss is denied by operation of law, and the trial court enters an order granting the motion before the movant forecloses that possibility by filing a notice of interlocutory appeal. Because the movant in such circumstances obtains the relief it requested, and because only an unsuccessful TCPA movant has the right to an interlocutory appeal, there is nothing more to be accomplished by an interlocutory appeal.

Finally, to the extent the relief requested in this particular appeal encompasses a resolution of the Bureau's procedural quandary stemming from the holding of *Direct Commercial Funding*, that issue is fully resolved by the analysis necessary to dismiss the appeal, which explains why the trial court maintained plenary power to enter the order granting the TCPA motion to dismiss. Thus stretching our appellate jurisdiction to engage in a merits review of the denial of the TCPA motion to dismiss by operation of law is not necessary to provide the Bureau its full measure of relief And given the constitutional underpinnings of the mootness doctrine,[11] I question whether the rules of procedure ever could justify exercising our legislatively defined interlocutory appellate jurisdiction when there is no live controversy.

In sum, the provisions of Rule 29.5 and 29.6 do not compel us to resolve an interlocutory appeal from an order rendered moot by subsequent events, nor do they justify our doing so.

\* \* \*

The trial court's August 11 order set aside the July 28 denial of the Bureau's

motion to dismiss. It therefore rendered moot an appeal from the denial of the Bureau's motion. *See Hernandez*, 289 S.W.3d at 319. The appeal is moot because the Bureau already obtained the relief sought from the appeal. *See, e.g., Heckman v. Williamson Cty.*, 369 S.W.3d 137, 162 (Tex.2012). The only argument that the appeal is not moot is predicated on the mistaken view that a trial judge lacks plenary authority to revise an interlocutory ruling denying a TCPA motion to dismiss prior to the filing of a notice of interlocutory appeal and its attendant statutory stay of all trial proceedings pending the appeal. But for the Fourteenth Court's adoption of that rule, this appeal never would have been filed.

Our "duty to dismiss moot cases arises from a proper respect for the judicial branch's unique role under our constitution: to decide contested cases. Under our constitution, courts simply have no jurisdiction to render advisory opinions." *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993) (citing Tex. Const. art. II, § 1). I would dismiss this anomalous appeal for want of jurisdiction. Because the court does not, I respectfully dissent.

decided," and that "a trial court has continuing jurisdiction to grant a motion to dismiss beyond the 30–day period." *Id.*

11. *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex.1993) (citing Tex. Const. art. II, § 1).