**Opinion issued April 18, 2023**



In The

# Court of Appeals

### For The

# First District of Texas

_____

## NO. 01-21-00470-CV

_____

**BRIAN P. CWEREN AND THE CWEREN LAW FIRM PLLC, Appellants**

**V.**

**EUREKA MULTIFAMILY GROUP, L.P., RENE CAMPOS, JIMMY ARNOLD, AND CHRIS ROBERTSON, Appellees**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-18448**

---

### MEMORANDUM OPINION

In this interlocutory appeal,[1] appellants, Brian P. Cweren and the Cweren Law

Firm PLLC (the "Cweren Law Firm") (collectively, "appellants"), challenge the trial

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.008, 51.014(a)(12).

court's denial of their motion to dismiss[2] the claims of appellees, Eureka Multifamily Group, L.P. ("Eureka"), Rene Campos, Jimmy Arnold, and Chris Robertson (collectively, "appellees"), pursuant to the Texas Citizens Participation Act ("TCPA").[3] In three issues, appellants contend that the trial court did not deny their motion to dismiss,[4] and if the trial court did actually deny their motion to dismiss, it erred in doing so.

We affirm.

## Background[5]

In their original petition, appellees alleged that Cweren was the founding and managing member of the Cweren Law Firm and appellants "h[eld] themselves out as experts in the apartment industry." Appellants offered "entity formation[]" services to their clients as well as "defense of entities" services when their clients were being sued. However, appellants "misrepresent[ed] their credentials and

---

[2] *See id.* § 27.003(a); *see also id.* § 27.005.

[3] *See id.* §§ 27.001–.011.

[4] *See id.* § 27.008(a) ("If a court does not rule on a [TCPA] motion to dismiss . . . in the time prescribed by [Texas Civil Practice and Remedies Code] [s]ection 27.005, the motion is considered to have been denied by operation of law . . . .").

[5] To the extent that any of the parties have directed this Court to documents attached to their appellate filings that were not otherwise contained in the appellate record, we note that the attachment of documents as exhibits or appendices to an appellate brief does not constitute formal inclusion of such documents in the record for appeal, and we have not considered matters outside of the record in our review. *See McCann v. Spencer Plantation Invs., Ltd.*, No. 01-16-00098-CV, 2017 WL 769895, at *4 n.5 (Tex. App.—Houston [1st Dist.] Feb. 28, 2017, pet. denied) (mem. op.).

affiliations within the Texas apartment industry to induce members of the apartment industry to retain them," and then appellants "routinely abuse[d] th[eir] [apartment-industry] clients" once the clients become dissatisfied. Appellants often filed lawsuits against their former clients and their principals. Appellants did this to "extract sums of monies beyond any amount [that appellants] allege[d] to be due and owing at the end of the[ir] relationship [with a client]." Appellants would accuse their clients of committing fraud "when[ever] they [would] get into disagreements with [their] clients and [appellants would] use [such] allegations to shake down payments from the [clients that] they [had] represented, or any individuals who [were] associated with the[] [client's] ownership[] or management."

Related to appellees, specifically, appellees alleged that on November 1, 2013, appellants and Eureka signed a representation agreement "pertaining to a particular matter involving a [specific] property in . . . Eureka['s] manage[d] portfolio." Arnold, the president of Eureka, signed the agreement with appellants on behalf of Eureka. "Managers at other properties within the Eureka managed portfolio retained [appellants] thereafter, from time to time, to provide property specific representation, on a matter-by-matter basis, where the designated property was [appellants'] sole client in the matter." Because appellants marketed and advertised their alleged expertise and experience in the apartment industry, appellees alleged that Eureka was induced to retain appellants to represent Eureka and Eureka

3

managed properties and to continue to allow representation over the course of several years.

When Eureka initially retained appellants, it agreed to allow Eureka property managers to also retain appellants thereafter on behalf of Eureka managed properties, in reliance upon appellants' ongoing representations to Eureka about appellants' "depth of attorney talent, [their] vast experience and supposed expertise as lawyers for apartments and owners and managers, and the tacit or implicit endorsement by the Texas Apartment Association of [Cweren] as a go-to attorney for apartment owners and operators in Texas that [was] implied by Cweren's published representations about his significant high-level roles in the [Texas Apartment] Association."

Appellees further alleged that in the course of representing Eureka managed properties, appellants received confidential information about the ownership entities, their key principals, including Campos, Arnold, and Robertson, and the operational services of Eureka and its managed properties. Because appellants viewed appellees as clients, they assumed duties to appellees that were owed by attorneys to clients. "Loyalty [was] an essential element in [appellants'] relationship [with appellees], as [was] preservation of [appellees'] confidential information."

According to appellees, appellants "work product in cases for various properties in the [Eureka] managed portfolio became increasingly shoddy and more

expensive, over time," and by April 2020, " [Eureka] property managers who [had] retained [appellants] to represent the properties they managed" had grown concerned "about the quality of [appellants'] work and their slow and questionable billing practices and failures to submit bills in the manner requested and instructed by the [Eureka managed properties that] were [being] represented." Appellants also began groundlessly and "aggressively demanding" payment from individuals who were not responsible for the payment of invoices, including through the threat of lawsuits if appellees refused appellants' payment demands.

In April and May 2020, appellants, while still representing the Eureka managed portfolio in pending matters, and as appellants claimed, while representing each appellee, appellants "began an abusive campaign to collect" payment from appellees for "invoices [appellants] claimed were due and outstanding." The invoices were addressed to various Eureka managed properties, and not to Eureka or Campos, Arnold, or Robertson, and appellants knew so. But appellants nevertheless harassed appellees, demanded payment from them, and threatened appellees with lawsuits if appellees did not pay.

For instance, Cweren first approached Arnold and demanded that he pay the allegedly due invoices, "telling Arnold that he was going to f*** up a bunch of people if he wasn't immediately paid, including . . . Campos, and that if [Cweren was] not paid immediately, his goal was to put Eureka out of business." Cweren

also "boasted about allegedly causing another former client who failed to pay his bills, to file a bankruptcy case."

After failing to extract any payment from Arnold, Cweren "reached out . . . to Robertson[,] . . . threatening a collection lawsuit." Cweren's payment demand was then sent to an operations executive at Eureka, and when the executive attempted to resolve Cweren's complaints as to lack of payment, Cweren escalated his abusive behavior. In an email sent to the operations executive, Cweren called the executive "arrogant and an idiot" and told him that he was "not going to f[*]ck around" and that any unpaid invoice older than sixty days would result in a lawsuit being filed. (Internal quotations omitted.)

Appellees alleged that appellants eventually retaliated against appellees' rejection of appellants' payment demands by filing suit, in county court, against appellees to collect the allegedly outstanding amounts owed (the "county court suit"). In the county court suit, appellants also alleged that appellees had engaged in fraud. The Cweren Law Firm was the plaintiff and appellees were the defendants in the county court suit. Cweren was not a party to the county court suit.

According to appellees, appellants further retaliated against appellees, beginning in August 2020, by "appearing in lawsuits [to represent] clients against one or more of the [Eureka] managed properties" even though appellants had

previously represented those Eureka managed properties, which created a conflict of interest.

Appellees brought claims against appellants for negligence, gross negligence, breach of fiduciary duty, and abuse of process. As to their negligence and gross negligence claims, appellees alleged that to the extent that appellants represented Eureka in an attorney-client relationship, appellants were negligent in failing to protect Eureka's interests by not giving legal advice about any allegedly wrongful, unlawful, or fraudulent actions, imputable or otherwise harmful to Eureka, and that were committed by any officer, employee or other person associated with Eureka. Such negligence included appellants' "failure to first attempt to resolve an alleged legal violation by taking measures within [Eureka] and [appellants] disclos[ure] [of] the alleged violation publicly, when there was no legal duty on the part of [appellants] to do so." To the extent that appellants had attorney-client relationships with Campos, Arnold, and Robertson, individually, appellees alleged that appellants were negligent in failing to give legal advice about any allegedly wrongful, unlawful, or fraudulent actions, imputable or otherwise harmful to Eureka, that were committed by Campos, Arnold, and Robertson, as officers, employees, or other persons associated with Eureka. Such negligence included appellants' "failure to advise [Campos, Arnold, and Robertson] that their alleged conduct that [appellants]

7

perceived to be unlawful, wrongful[,] or fraudulent while occurring, needed to be remediated."

As to their breach-of-fiduciary-duty claim, appellees alleged that appellants owed appellees a fiduciary duty based on the attorney-client relationship between appellees and appellants that appellants had asserted. Appellants owed appellees the duty of loyalty and utmost good faith, the duty of candor, the duty to refrain from self-dealing, the duty to act with integrity of the strictest kind, the duty of fair and honest dealing, the duty of full disclosure of all material facts, the duty to represent appellees with undivided loyalty, and the duty to act with absolute candor, openness, honesty, and without any concealment or deception. Appellants breached their fiduciary duty to appellees by: (1) acting to promote their own financial interests ahead of the interests of appellees at a time when an alleged attorney-client relationship between appellants and appellees, or members of the Eureka organization, was ongoing and had not been terminated; (2) harassing appellees and "acting in a hostile and adversarial posture" toward appellees who appellants were claiming to be clients, on a basis that constituted a conflict of interest, without disclosing the existence of such conflicts, obtaining a waiver of the same, and without withdrawing from the ongoing representation; (3) improperly and unlawfully using confidential client information provided by appellees adversely to them, without their knowledge or consent; and (4) misrepresenting appellants'

8

background, experience, depth of personnel, and industry affiliations to induce Eureka to authorize appellants' retention by properties within the Eureka managed portfolio.

As to the abuse-of-process claim, Campos alleged that appellants served him with process in the county court suit. But appellants "made an illegal, improper or perverted use of the process after [process], via the substituted service order[,] was issued." Appellants "had an ulterior motive or purpose in using the form of process they used, and in serving process upon . . . Campos" in the county court suit.

Appellees sought actual damages, exemplary damages, and disgorgement of the fees they had paid to appellants.

Appellants answered, generally denying the allegations in appellees' petition and asserting various affirmative defenses. Appellants then moved to dismiss appellees' claims against them under the TCPA, arguing that the trial court should dismiss appellees' claims because they were "based on, related to, and [were] in response to [appellants'] exercise of their right to petition" and appellees could not "meet their burden to present clear and specific evidence of each . . . element of their" claims against appellants. According to appellants, Eureka owned and operated apartment communities in the United States, and Campos, Arnold, and Robertson were employees, owners, and agents of Eureka. For many years, appellants provided legal services for many properties owned or managed by Eureka

9

or a "Eureka related entity." But over time, the properties failed to pay appellants for their work. On June 26, 2020, the Cweren Law Firm sued a Eureka property in the county court suit. In December 2020, the Cweren Law Firm sued additional entities, i.e., Eureka and Campos, in the county court suit. On January 5, 2021, the Cweren Law Firm sued Arnold and Robertson in the county court suit, and the relationship between appellants and appellees then became "extremely contentious." Appellees "immediately made it abundantly clear through their counsel [in the county court suit] that they intended to respond to the [c]ounty [c]ourt [s]uit by trying to enact revenge on [appellants] and would do so by trying to injure [appellants] and create as many problems as possible." And appellees, through their counsel in the county court suit, specifically stated that they would file suit against appellants "as a direct response to [the] serving [of] Campos in the [c]ounty [c]ourt [s]uit." On March 29, 2021, appellees filed suit against appellants in the instant case, which appellants asserted was a "direct retaliation for" the Cweren Law Firm filing suit against appellees in the county court suit.

Appellants also asserted that after the Cweren Law Firm filed an emergency motion for sanctions against appellees' counsel in the county court suit, appellees' counsel in the county court suit, in response to the sanctions motion, "made claims that [were] nearly identical to the claims made by [appellees] against [appellants] in the" instant case. Appellants believed that appellees filed suit against appellants in

10

this case to retaliate for the Cweren Law Firm "filing and prosecuting the [c]ounty [c]ourt [suit] so [that appellees] c[ould] continue the same harassing behavior for which they were . . . sanctioned in the [c]ounty [c]ourt [s]uit."

According to appellants, appellees "judicially admit[ted]" in their original petition that "th[e] [instant] case [was] related to the [c]ounty [c]ourt [s]uit." And related to his claim for abuse of process, Campos "specifically state[d] that the cause of action [was] based upon the service on Campos by substituted service in the [c]ounty [c]ourt [s]uit." In emails, appellees' counsel in the county court suit threatened appellants that they had "earned the claims coming their way" by serving Campos in the county court suit and stated that appellants would "face the consequences" of serving Campos in the county court suit. (Internal quotations omitted.) Further, appellants believed that the timing of appellees' suit against them established that it was done in response to the Cweren Law Firm filing suit against appellees in the county court suit. Specifically, Campos was served in the county court suit only ten days before appellees filed suit in this case. And two weeks after the county court entered a sanctions order in the county court suit against appellees, appellees "aggressively pursued service on [appellants]" in the instant case. Appellants asserted that "[t]he actions taken by [appellees] in th[e] [instant] case [were] a direct result of the happenings in the [c]ounty [c]ourt [s]uit."

11

Appellants requested attorney's fees, costs, and sanctions in their motion to dismiss.

In response to appellants' motion to dismiss, appellees filed their first amended petition, alleging that Cweren was the founding and managing member of the Cweren Law Firm and appellants "h[eld] themselves out [to be] experts in the apartment industry, sometimes [stating] that no lawyer or law firm ha[d] greater expertise in the industry than [appellants] d[id]." Appellants were engaged in the selling of legal services, and appellees were consumers.

According to appellees, appellants habitually engaged in false and deceptive advertising practices to induce prospective clients to retain them and to induce existing clients to expand the scope of their relationship with appellants. As to appellees, specifically, on November 1, 2013, the Cweren Law Firm and Eureka signed a representation agreement pertaining to a particular matter involving a property in the Eureka managed portfolio. Arnold signed that agreement on Eureka's behalf, solely in his capacity as the president of Eureka. Managers of other properties within Eureka's managed portfolio retained appellants thereafter, from time to time, to provide property specific representation, on a matter-by-matter basis, where the designated property was appellants' sole client in the matter.

Despite this, the Cweren Law Firm alleged in the county court suit a "more global attorney-client relationship," with Eureka affiliated properties and entities. In

the county court suit, appellants alleged the existence of an attorney-client relationship with each appellee, and appellants alleged that appellees had benefitted from the attorney-client relationship. Cweren was alleged to have been the primary attorney who was responsible for providing services to appellees. According to appellees, having alleged an attorney-client relationship with appellees, appellants voluntarily undertook all duties owed by lawyers to clients in an attorney-client relationship.

Over time, appellants' work product in cases involving properties in the Eureka managed portfolio "became increasingly shoddy and more expensive," and by April 2020, "[Eureka] property managers who [had] retain[ed] [appellants] to represent the properties they managed" had grown concerned "about the quality of [appellants'] work and their slow or questionable billing practices and failures to submit bills in the manner requested and instructed by the parties who were [being] represented." At the same time, appellants "aggressively demand[ed]" payment "from a host of individuals who were not responsible for the payment of the invoices" that appellants asserted needed to be paid. Appellants knew who was responsible for the payment of the invoices and ignored that information. Instead, appellants opted to engage in an abusive campaign to collect invoices that appellants claimed were due and outstanding, particularly from appellees. Appellants retaliated against appellees for rejecting appellants' payment demands by filing suit in the

13

county court suit over the debts purportedly owed and alleging that appellees had engaged in fraud. Appellants used the county court suit to disparage appellees, accusing them of engaging in criminal misconduct.

In addition to suing appellees, appellants "brazenly . . . appeared in cases adversely to Eureka or its managed properties, or threatened to become involved in such cases, confirming an expressed intention to bankrupt Eureka" and the other appellees or to "tortiously interfere with [appellees'] relationships with third parties."

In their first amended petition, appellees brought claims against appellants for negligence, gross negligence, breach of fiduciary duty, negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and abuse of process.[6] As to their negligence and gross negligence claims, appellees alleged that by virtue of the attorney-client relationship that appellants alleged existed between appellants and appellees, appellants owed appellees a duty of care, a duty to protect

---

[6] Because appellees added their claims for negligent misrepresentation and violations of the DTPA after appellants filed their TCPA motion to dismiss, appellants did not seek dismissal of appellees' claims for negligent misrepresentation and violations of the DTPA in their motion to dismiss. Appellants also did not amend their TCPA motion to dismiss to include appellees' claims for negligent misrepresentation and violations of the DTPA, and appellants did not file a separate TCPA motion seeking to dismiss appellees' claims for negligent misrepresentation and violations of the DTPA. Thus, we do not discuss these claims in detail and need not consider whether appellants' TCPA motion to dismiss was properly denied by operation of law related to appellees' negligent-misrepresentation and DTPA-violations claims.

14

appellees' interests, and a duty to avoid harming appellees' interests. Appellants were negligent in "failing to protect Eureka's interests by [not] giv[ing] it legal advice about any allegedly wrongful, unlawful or fraudulent actions, imputable to or that would harm Eureka, allegedly committed by any . . . officer, employee, or other person associated" with Eureka. The negligence included appellants' "failure to first attempt to resolve an alleged legal violation by taking measures within [Eureka] and [appellants'] disclos[ure] [of] the alleged violation publicly, when there was no legal duty on the part of [appellants] to do so." As to Campos, Arnold, and Robertson, appellants were negligent in "failing to protect [the] interests [of Campos, Arnold, and Robertson] by [not] giv[ing] them legal advice about any allegedly wrongful, unlawful[,] or fraudulent actions, imputable to or that would harm them or entities with whom they were affiliated, allegedly committed by any of them as officers, employees, or other persons associated with [Eureka]." And by "fail[ing] to advise [Campos, Arnold, and Robertson] that their alleged conduct that [appellants] perceived to be unlawful, wrongful, or fraudulent while occurring, needed to be remediated."

As to their breach-of-fiduciary-duty claim, appellees alleged that appellants owed them the duty of loyalty and utmost good faith, the duty of candor, the duty to refrain from self-dealing, the duty to act with integrity of the strictest kind, the duty of fair and honest dealing, the duty of full disclosure of all material facts, the duty to

15

represent appellees with undivided loyalty, and the duty to act with absolute candor, openness, honesty, and without any concealment or deception. Appellants breached their fiduciary duties by: (1) acting to promote their own financial interests ahead of the interests of appellees at a time when any alleged attorney-client relationship between appellants and appellees, or members of the Eureka organization, was ongoing and had not been terminated; (2) harassing appellees and acting in a hostile and adversarial posture toward appellees who appellants claimed were their clients, on a basis that constituted a conflict of interest, without disclosing the existence of such conflicts, obtaining a waiver of the same, and without withdrawing from the ongoing representation; (3) improperly and unlawfully using confidential client information provided by appellees adversely to them, without their knowledge or consent; and (4) misrepresenting appellants' background, experience, depth of personnel, and industry affiliations to induce Eureka to authorize appellants' retention by properties within the Eureka managed portfolio.

As to the abuse-of-process claim, Campos alleged that he was served with process in the county court suit and appellants made an illegal, improper, or perverted use of the process after it was issued. The process was used to accomplish some end other than its lawfully intended purpose, i.e., to embarrass and harass Campos. Process was also used to conceal from Campos that he had actually been

16

served in the county court suit and to collect from him sums of money that he did not owe and damages arising from conduct that he did not engage in.

Appellees sought actual damages, exemplary damages, treble damages, and disgorgement of fees as well as attorney's fees.

In their response to appellants' motion to dismiss, appellees asserted that their suit against appellants arose from appellants' "provision of legal services, misrepresentations and deceptive acts and practices related to those services, and a subsequent commercial dispute [over legal] fees." According to appellees, Eureka initially retained appellants to provided limited legal services for properties owned and managed by Eureka. A dispute then arose, and the Cweren Law Firm, represented by Cweren, sued Eureka, its principal, Campos, and its former and current officers, Arnold and Robertson, in the county court suit. In the county court suit, appellants revealed that their understanding of the scope of the attorney-client relationship between Eureka and appellants was broader than Eureka had understood it to be because the Cweren Law Firm identified Campos, Arnold, and Robertson as persons who had hired appellants to perform legal services in various matters. In the county court suit, the Cweren Law Firm alleged that it had performed its obligations, but appellees had "breached their contracts with [appellants] when [they] failed to pay the fees associated with the legal and professional services provided by" appellants. (Internal quotations omitted.) Because the Cweren Law

17

Firm, in the county court suit, alleged that appellees were intended beneficiaries of the legal services that appellants had provided, appellants admitted that they had assumed and owed appellees all the duties an attorney and a law firm owed to a client.

In the instant suit, appellees alleged that appellants' actions and omissions fell below the standard of care and appellants committed negligence and gross negligence when they, without appellees' prior written consent, publicly disclosed confidential information, beyond what was necessary for appellants to pursue their claims against appellees. Appellees also alleged that appellants breached their fiduciary duties by: (1) improperly and unlawfully using confidential client information provided by appellees adversely to them, without appellees' knowledge or consent; (2) engaging in conflicts of interest by representing clients adverse to appellees without disclosure or consent; and (3) misrepresenting appellants' background, experience, depth of personnel, and industry affiliations to induce appellees to retain appellants to provide legal services for them. And appellees alleged that appellants engaged in abuse of process because appellants' service of process on Campos in the county court suit "was used to accomplish some end other

than its lawfully intended purpose," i.e., to embarrass and harass Campos.[7] (Internal quotations omitted.)

According to appellees, appellants' TCPA motion to dismiss should be denied because the commercial-speech exemption applied to appellees' claims for negligence, gross negligence, breach of fiduciary duty, and abuse of process.

After appellants replied, asserting that the commercial-speech exemption did not apply to appellees' claims for negligence, gross negligence, breach of fiduciary duty, and abuse of process, the trial court held an oral hearing on July 29, 2021. On August 30, 2021, appellants' TCPA motion to dismiss was denied by operation of law.[8] On September 3, 2021, the trial court signed an order granting, in part, appellants' motion to dismiss under the TCPA.[9] In its September 3, 2021 order, the trial court dismissed the negligence, gross-negligence, and breach-of-fiduciary-duty

---

[7] Appellees also noted that they had amended their original petition after appellants filed their TCPA motion to dismiss to add their claims for negligent misrepresentation and violations of the DTPA against appellants, and those additional claims were not subject to appellants' motion.

[8] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.005(a) ("The court must rule on a [TCPA] motion [to dismiss] not later than the 30th day following the date the hearing on the motion concludes."), 27.008(a) ("If a court does not rule on a [TCPA] motion to dismiss . . . in the time prescribed by [Texas Civil Practice and Remedies Code] [s]ection 27.005, the motion is considered to have been denied by operation of law . . . ."); TEX. R. CIV. P. 4 ("Computation of Time").

[9] *But see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.005(a). 27.008(a); *see also Direct Com. Funding, Inc. v. Beacon Hill Estates, LLC*, 407 S.W.3d 398, 402 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("Because a trial court is not authorized to grant a motion to dismiss under the [TCPA] more than 30 days after the hearing on the motion, the trial court erred in signing such an order . . . .").

claims of Campos, Arnold, and Robertson against appellants, Campos's abuse-of-process claim against appellants, and Eureka's claims for negligence, gross negligence, and breach of fiduciary duty against Cweren.[10]

**Denial by Operation of Law**

In their first issue, appellants argue that their TCPA motion to dismiss was not denied by operation of law on August 30, 2021 because the trial court "invoked the authority granted by the Texas Supreme Court's emergency orders and [extended] the deadline for it to rule on [appellants'] TCPA [m]otion [to] September 3, 2021." (Internal quotations omitted.)

The Texas Legislature enacted the TCPA "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. To that end, the TCPA provides for early dismissal of a legal action that is "based on or is in

---

[10]    The September 3, 2021 order did not dismiss Eureka's negligence, gross-negligence, and breach-of-fiduciary-duty-claims against the Cweren Law Firm. We also note that the trial court, on September 2, 2021, dismissed the negligence, gross-negligence, and breach-of-fiduciary duty claims of Campos, Arnold, and Roberson against appellants under Texas Rule of Civil Procedure 91a. *See* TEX. R. CIV. P. 91a. This opinion does not address the propriety of the trial court's dismissal in its September 2, 2021 order.

response to a party's exercise of the right of free speech, right to petition, or right of association." *Id.* § 27.003(a).

The Texas Legislature has included specific deadlines in the TCPA. *In re Neely*, No.14-19-01018-CV, 2020 WL 1434569, at *2 (Tex. App.—Houston [14th Dist.] Mar. 24, 2020, orig. proceeding) (mem. op.); *Direct Com. Funding, Inc. v. Beacon Hill Estates, LLC*, 407 S.W.3d 398, 401 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A motion to dismiss under the TCPA "must be filed not later than the 60th day after the date of service of the legal action," but upon a showing of good cause, the trial court may extend the time to file a motion. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b). A hearing on a TCPA motion to dismiss "must be set not later than the 60th day after the date of service of the motion unless the docket conditions of the court require a later hearing, upon a showing of good cause, or by agreement of the parties, but in no event shall the hearing occur more than 90 days after service of the motion," except when the trial court allows discovery as authorized by the statute. *See id.* § 27.004(a), (c). The trial court must rule on a TCPA motion to dismiss by "the 30th day following the date of the hearing on the motion." *Id.* § 27.005(a). This last deadline is mandatory. *In re Neely*, 2020 WL 1434569, at *2; *Direct Com. Funding*, 407 S.W.3d at 401. The Legislature did not give the trial court discretion to extend its deadline to rule, and instead provided that if the trial court does not rule on the TCPA motion to dismiss within thirty days after

21

the hearing, then the motion is denied by operation of law. *See In re Neely*, 2020 WL 1434569, at *2; *Direct Com. Funding*, 407 S.W.3d at 401; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.008(a). If the trial court signs an order purportedly granting a TCPA motion to dismiss more than thirty days after the hearing on the motion, that order is void, and the controlling ruling is the denial of the motion by operation of law. *In re Neely*, 2020 WL 1434569, at *4; *Dallas Morning News, Inc. v. Mapp*, No. 05-14-00848-CV, 2015 WL 3932868, at *3 (Tex. App.—Dallas June 26, 2015, no pet.) (mem. op.); *see also Montiel v. Lechin*, No. 01-18-00781-CV, 2019 WL 1186695, at *2 (Tex. App.—Houston [1st Dist.] Mar. 14, 2019, no pet.) (mem. op.) ("[T]rial courts lack authority to grant a motion to dismiss under the TCPA more than 30 days after the hearing on the motion.").

Here, appellants filed their motion to dismiss under the TCPA on June 14, 2021. The trial court held a hearing on appellants' motion on July 29, 2021. At the hearing, the trial court did not express any intent to continue or reset the hearing. There is nothing in the record to establish that the trial court extended the hearing after July 29, 2021 or that it recessed or reconvened the hearing at a later date. At the conclusion of the July 29, 2021 hearing, the trial court told the parties that it would "take the motion[] under advisement and issue a ruling." Because the trial court held its hearing on appellants' TCPA motion to dismiss on July 29, 2021, it had until August 30, 2021 to rule on appellants' TCPA motion to dismiss. *See* TEX.

22

CIV. PRAC. & REM. CODE ANN. § 27.005(a) ("The court must rule on a [TCPA] motion [to dismiss] not later than the 30th day following the date the hearing on the motion concludes."); TEX. R. CIV. P. 4 ("Computation of Time"). Here, the trial court did not rule on appellants' TCPA motion to dismiss by August 30, 2021; thus, appellants' motion was denied by operation of law on that date.[11] *See In re Neely*, 2020 WL 1434569, at *2; *Direct Com. Funding*, 407 S.W.3d at 401; *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.005(a), 27.008(a).

Appellants argue that their TCPA motion to dismiss was not denied by operation of law on August 30, 2021 because the trial court, in its September 3, 2021 order, granted, in part, appellants' motion to dismiss and "invoked the authority granted by the Texas Supreme Court's emergency orders," extending "the deadline for it to rule on the TCPA [m]otion [to dismiss] until September 3, 2021." (Internal quotations omitted.)

Because of the onset of the COVID-19 pandemic, on March 13, 2020, Texas Governor Greg Abbott issued a proclamation under the Texas Disaster Act of 1975,[12] certifying that "COVID-19 pose[d] an imminent threat of disaster" in all 254 Texas

---

[11]   Apparently believing their TCPA motion to dismiss was denied by operation of law on August 30, 2021, appellants filed their notice of appeal on August 31, 2021, stating that they gave "notice of their desire to appeal the denial of [their] [m]otion to [d]ismiss [u]nder the [TCPA], which occurred by operation of law on or about August 30, 2021."

[12]   *See* TEX. GOV'T CODE ANN. § 418.001–.261.

23

counties.[13]  *See* The Governor of the State of Tex., Proclamation No. 41-3720, 45

Tex. Reg. 2087, 2094–95 (2020); *In re Hotze*, 627 S.W.3d 642, 643–44 (Tex. 2020);

*In re Landstar Ranger, Inc.*, No. 06-20-00047-CV, 2020 WL 5521136, at *4 (Tex.

App.—Texarkana Sept. 15, 2020, orig. proceeding) (mem. op.); *see also* TEX. GOV'T

CODE ANN. § 418.014 ("Declaration of State of Disaster"); *State v. El Paso Cnty.*,

618 S.W.3d 812, 815 (Tex. App.—El Paso 2020, orig. proceeding [mand. dism'd])

(noting Governor Abbott renewed his disaster proclamation each month).  On March

13, 2020, the Texas Supreme Court issued its First Emergency Order Regarding the

COVID-19 State of Disaster under Texas Government Code section 22.0035(b).[14]

*See* Supreme Court of Texas, First Emergency Order Regarding the COVID-19 State

of Disaster, Misc. Docket No. 20-9042, 596 S.W.3d 265, 265–66 (Tex. 2020); *see*

*also Kim v. Ramos*, 632 S.W.3d 258, 266 (Tex. App.—Houston [1st Dist.] 2021, no

pet.).  The Texas Supreme Court's First Emergency Order provided:

---

[13]  *See Kim v. Ramos*, 632 S.W.3d 258, 261 n.5, 266 & n.13 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (explaining "COVID-19 [was] a disease caused by a novel coronavirus" and noting "the country [was] in the middle of a pandemic due to the virus known as COVID-19" (internal quotations omitted)); *see also Abbott v. La Joya Indep. Sch. Dist.*, No. 03-21-00428-CV, 2022 WL 802751, at *1 (Tex. App.—Austin Mar. 17, 2022, pet. filed) (mem. op.) ("On March 13, 2020, Governor Abbott, in his official capacity, issued a statewide disaster declaration, certifying that the novel coronavirus (COVID-19) pose[d] an imminent threat of disaster for all Texas Counties, and he ha[d] renewed that proclamation every month since." (internal quotations omitted)).

[14]  *See* TEX. GOV'T CODE ANN. § 22.0035(b) (permitting Texas Supreme Court to modify or suspend procedures for conduct of any court proceeding "affected by a disaster during the pendency of a disaster declared by the governor").

> Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent: . . . [m]odify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted.

*See* Supreme Court of Texas, First Emergency Order Regarding the COVID-19 State of Disaster, 596 S.W.3d at 265.

Throughout the COVID-19 pandemic, the Texas Supreme Court, until recently,[15] issued regular emergency orders providing guidance to courts, practitioners, and litigants regarding case administration during the pandemic. *In re Orsak*, No. 01-21-00481-CV, --- S.W.3d ---, 2022 WL 3649365, at *7 (Tex. App.—Houston [1st Dist.] Aug. 25, 2022, orig. proceeding); *see also A. N. v. Tex. Dep't of Family & Protective Servs.*, No. 03-22-00099-CV, 2022 WL 3638211, at *1 (Tex. App.—Austin Aug. 23, 2022, no pet.) (mem. op.) (noting supreme court issued "a series of emergency orders in response to the COVID-19 pandemic that permit[ted] trial courts to suspend the deadlines and procedures" (internal quotations omitted)); *Kim*, 632 S.W.3d at 266 (recounting Texas governor's disaster declaration on March 13, 2020 certifying that "COVID-19 pose[d] an imminent threat of disaster" in Texas and series of emergency orders issued by Texas Supreme Court pursuant to

---

[15] *See* Supreme Court of Texas, Final General Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket No. 23-9005 (Tex. Jan. 27, 2023).

declaration allowing state courts to modify or suspend deadlines and procedures in order to "avoid risk to court staff, parties, attorneys, jurors, and the public" while disaster declaration was in effect (alteration in original) (internal quotations omitted)).

Relevant here, on July 19, 2021, the Texas Supreme Court issued its Fortieth Emergency Order Regarding the COVID-19 State of Disaster (the "Fortieth Emergency Order"), recognizing that "Governor Abbott ha[d] declared a state of disaster in all 254 counties in the State of Texas in response to the imminent threat of the COVID-19 pandemic," and providing:

> Subject only to constitutional limitations, *all courts in Texas may in any case, civil or criminal, without a participant's consent: . . . modify* or suspend any and *all deadlines* and procedures, whether *prescribed by statute*, rule, or order for a stated period ending no later than October 1, 2021.

*See* Supreme Court of Texas, Fortieth Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket No. 21-9079, 629 S.W.3d 911, 912 (Tex. 2021) (emphasis added). Appellants assert, based on the Texas Supreme Court's Fortieth Emergency Order, that the trial court was allowed to extend the thirty-day deadline it had to rule on appellants' TCPA motion to dismiss, and the trial court, in its September 3, 2021 order, actually did extend its deadline to rule on appellants' motion until September 3, 2021. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(a) ("The court must rule on a [TCPA] motion [to dismiss] not later than the

30th day following the date the hearing on the motion concludes."). And because the trial court extended its deadline to rule on appellants' TCPA motion to dismiss to September 3, 2021, appellants' motion was not denied by operation of law on August 30, 2021.

The trial court, in its September 3, 2021 order, stated that "[p]ursuant to its authority granted by the Texas Supreme Court's emergency orders, [it] suspend[ed] the deadline to rule on the [TCPA] motion to dismiss heard on July 29, 2021 until September 3, 2021." However, we note that the trial court's September 3, 2021 order, in which it attempted to extend its deadline to rule on appellants' TCPA motion to dismiss, was signed *after* the trial court's deadline to rule had passed and *after* appellants' motion was denied by operation of law on August 30, 2021.

Appellants have not provided this Court with any authority, and we have found none, indicating that the Texas Supreme Court's Emergency Orders Regarding the COVID-19 State of Disaster may be used *after* the deadline to rule has passed and *after* the TCPA motion has been denied by operation of law to revive or extend the mandatory deadline for the trial court to rule on a TCPA motion to dismiss. *Cf. Broadway v. Lean on 8, Inc.*, No. 03-21-00663-CV, 2022 WL 3691678, at *4 (Tex. App.—Austin Aug. 26, 2022, no pet.) (mem. op.) (noting party sought to have statute of limitations period extended by trial court, pursuant to Texas Supreme Court's emergency orders, after it had expired, and stating court "ha[d]

27

found no authority" supporting assertion that "the emergency orders would permit the retroactive extension of the statute of limitations"); *Prescod v. Tkach*, No. 02-21-00162-CV, 2022 WL 246858, at *5 (Tex. App.—Fort Worth Jan. 27, 2022, no pet.) (mem. op.) (explaining "[t]he emergency orders do not give courts authority to revive jurisdiction once a jurisdictional deadline has passed" and noting court had found "no authority" supporting assertion that "the emergency orders permit[ted] the retroactive extension of the statute of limitations" (emphasis omitted)); *see also Harris Cnty. v. Davidson*, 653 S.W.3d 318, 322–23 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *Floeck v. Crescent Continuing Care Ctr. Co.*, No. 14-21-00101-CV, 2022 WL 1463767, at *4 (Tex. App.—Houston [14th Dist.] May 10, 2022, no pet.) (mem. op.) (although trial court could have exercised its discretion to grant party extension of time to file expert report based on Texas Supreme Court's emergency orders, party not entitled to extension when he did not invoke emergency orders in trial court and did not seek extension to file expert report until *after* deadline had passed). Although appellants direct us to our sister appellate court's opinion in *CBS Stations Group of Texas, LLC v. Burns*, No. 05-20-00700-CV, 2020 WL 7065827 (Tex. App.—Dallas Dec. 3, 2020, no pet.) (mem. op.), to support their position that the trial court extended its deadline to rule on appellants' TCPA motion to dismiss, we note that the circumstances presented in *Burns* differ from the circumstances in the instant case.

28

In *Burns*, Cedric Burns filed suit against CBS Stations Group of Texas, LLC ("CBS") for defamation and intentional infliction of emotional distress over CBS's broadcast of a false report that he was part of a gang that had committed several bank robberies. 2020 WL 7065827, at *1. In response, CBS filed a motion to dismiss Burns's claims against it under the TCPA. *Id.* The day before the trial court's hearing on the TCPA motion to dismiss, Burns filed a motion for continuance. *Id.* At the hearing, held on June 18, 2020, the trial court heard both the motion for continuance and CBS's TCPA motion to dismiss. *Id.* Burns asserted that he needed a continuance to obtain a doctor's affidavit to support his claim for intentional infliction of emotional district and because of the COVID-19 pandemic, the doctor could not get into her office to obtain what she needed to prepare the affidavit. *Id.* Thus, according to Burns, the COVID-19 pandemic had affected his ability to argue against CBS's TCPA motion to dismiss. *Id.* And Burns asserted that the Texas Supreme Court's Seventeenth Emergency Order Regarding the COVID-19 State of Disaster allowed the trial court to extend all civil deadlines in the case. *Id.* At the end of the hearing on Burns's motion for continuance and CBS's TCPA motion to dismiss, the trial court stated that it was "going to have to research th[e] whole Supreme Court issue" and that if it granted Burns's motion for continuance, then it would hold "an updated hearing." *Id.* When CBS informed the trial court that if it were to grant Burns's motion for continuance there would be "a pretty sticky

29

situation because [the trial court had] started the hearing" on CBS's TCPA motion to dismiss and it only had thirty days to rule after the hearing, the trial court responded that it could "continue the hearing." *Id.* Subsequently, on June 26, 2020, the trial court signed an order granting Burns's motion for continuance and stating that "the record on the [m]otion to [d]ismiss remain[ed] open, and pursuant to the Texas Supreme Court's Seventeenth Emergency Order, the deadline [was] extended to September 30, 2020." *Id.* at *1–2. On July 27, 2020, CBS filed a notice of appeal, stating that its TCPA motion to dismiss had been denied by operation of law on July 20, 2020. *Id.* at *2; *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.005(a), 27.008(a), TEX. R. CIV. P. 4 ("Computation of Time").

On appeal, the appellate court sought to determine whether it had jurisdiction over CBS's appeal, and in doing so, it considered whether CBS's TCPA motion to dismiss had been denied by operation of law on July 20, 2020. *Burns*, 2020 WL 7065827, at *1–3. The court noted that under the TCPA a trial court may extend the hearing date on a TCPA motion to dismiss to allow limited discovery relevant to the motion to dismiss. *See id.* at *2; *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.004(c), 27.006(b). The TCPA also permitted a trial court to recess a hearing on the TCPA motion to dismiss for the purpose of allowing discovery and to resume the hearing at any point within 120 days from the service of the motion to dismiss. *Burns*, 2020 WL 7065827, at *2; *see also* TEX. CIV. PRAC. & REM. CODE ANN.

30

§ 27.004(c); *Jones v. Heslin*, 587 S.W.3d 134, 136 (Tex. App.—Austin 2019, no pet.). An extension under such circumstances would reset the trial court's thirty-day deadline for ruling on the TCPA motion to dismiss in accordance with the extended hearing date. *Burns*, 2020 WL 7065827, at *2; *see also Jones*, 587 S.W.3d at 136–37. And the TCPA motion to dismiss would not be denied by operation of law within thirty days of the date of the TCPA-motion-to-dismiss hearing that had since been extended. *Burns*, 2020 WL 7065827, at *2. The appellate court also noted that the Texas Supreme Court's Seventeenth Emergency Order Regarding the COVID-19 State of Disaster granted the trial court discretion to suspend any and all deadlines, including those prescribed by statute. *Id.* Thus, because the trial court, in *Burns*, had continued its hearing on CBS's TCPA motion to dismiss, the appellate court concluded that CBS's motion was not denied by operation of law on July 20, 2020, but instead remained pending when CBS filed its notice of appeal. *Id.* at *3. Accordingly, the court held that because the TCPA motion to dismiss remained pending in the trial court, there was no order supporting an interlocutory appeal, and the court had to dismiss CBS's appeal for lack of jurisdiction. *Id.*

Although appellants assert that *Burns* stands for the proposition that the Texas Supreme Court's Emergency Orders Regarding the COVID-19 State of Disaster

31

"appl[y] to the deadlines under the TCPA,"[16] *Burns* does not support appellants' assertion that appellants' TCPA motion to dismiss was not denied by operation of law in this case. We note that, in *Burns*, to the extent that the trial court extended the applicable TCPA deadlines for hearing the TCPA motion to dismiss and ruling on the TCPA motion to dismiss based on the Texas Supreme Court's Seventeenth Emergency Order Regarding the COVID-19 State of Disaster, it did so *before* any of the TCPA deadlines had passed. *Burns* does not stand for the proposition that the Texas Supreme Court's Emergency Orders Regarding the COVID-19 State of Disaster may be used to revive or extend the mandatory deadline for the trial court to rule on a TCPA motion to dismiss *after* that deadline has passed and *after* the TCPA motion to dismiss has been denied by operation of law.

Here, appellants' TCPA motion to dismiss was denied by operation of law on August 30, 2021. Thus, we hold that the trial court's September 3, 2021 order purportedly granting appellants' TCPA motion to dismiss that was signed more than thirty days after the hearing on the motion is void, and the controlling ruling for purposes of this appeal is the August 30, 2021 denial of appellants' motion by operation of law. *See In re Neely*, 2020 WL 1434569, at *4; *Mapp*, 2015 WL 3932868, at *3; *see also Montiel*, 2019 WL 1186695, at *2 ("[T]rial courts lack

---

[16]     We need not express consider whether appellants' assertion is correct as a general proposition.

32

authority to grant a motion to dismiss under the TCPA more than 30 days after the hearing on the motion.").

We overrule appellants' first issue.

## Dismissal under TCPA

In their second and third issues, appellants argue that the trial court erred in denying their motion to dismiss appellees' suit against them because appellees' suit was "based on or in response to events in the [c]ounty [c]ourt [s]uit" and appellees did not "prove that either an exemption exist[ed]" or "provide clear and specific evidence of each element of their causes of action."

We review de novo the denial of a TCPA motion to dismiss. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 352–53 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). In deciding if a legal action should be dismissed under the TCPA, we consider "the pleadings, evidence a court could consider under [Texas] Rule [of Civil Procedure] 166a, . . . and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). The plaintiffs' allegations, and not the defendants' admissions or denials, constitute the basis of a legal action. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). We review the pleadings and evidence in the light most favorable to the non-movants. *Schimmel v. McGregor*, 438 S.W.3d

33

847, 855–56 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).  Whether the TCPA applies is an issue of statutory interpretation that we also review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

The TCPA provides a procedure for the expedited dismissal of retaliatory lawsuits that seek to intimidate or silence citizens on matters of public concern.  *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015); *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 500 S.W.3d 26, 37 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).  "The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits."  *In re Lipsky*, 460 S.W.3d at 589; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 ("The purpose of [the TCPA] is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."); *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 688 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).  Under the TCPA, a party may move to dismiss a "legal action" that is "based on or is in response to" the party's "exercise of the right of free speech, right to petition, or right of association."  TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a); *see also Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 131 (Tex. 2019); *Rodriguez v. Universal*

*Surgical Assistants, Inc.*, No. 01-19-00236-CV, 2020 WL 4758426, at *2 (Tex. App.—Houston [1st Dist.] Aug. 18, 2020, pet. denied). A "[l]egal action" is "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6) (internal quotations omitted).

To be entitled to dismissal under the TCPA, a movant has the initial burden to "demonstrate[] that [a] legal action is based on or is in response to" the movant's exercise of the right to petition, association, or free speech. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *see also Lowry v. Fox Television Stations, LLC*, No. 01-20-00627-CV, 2022 WL 2720509, at *4 (Tex. App.—Houston [1st Dist.] July 14, 2022, no pet.) (mem. op.). If the movant meets its initial burden, then the burden shifts to the non-movant. *Diogu Law Firm PLLC v. Experience Infusion Ctrs. LLC*, No. 01-19-00494-CV, 2020 WL 1681182, at *2 (Tex. App.—Houston [1st Dist.] Apr. 7, 2020, no pet.) (mem. op.). Whether the movant has met its initial burden to show by a preponderance of the evidence that the non-movant has asserted a legal action based on or in response to the movant's right to petition, association, or free speech is reviewed de novo. *See Hall*, 579 S.W.3d at 377.

Appellants argue that appellees' suit against them "is based on or is in response to [appellants'] right to petition" because appellees' suit "is in direct retaliation to the [Cweren Law Firm] bringing the [c]ounty [c]ourt [s]uit, serving the

[appellees] therein, and filing [a] . . . [m]otion for [s]anctions" in the county court suit. Further, appellants argue that appellees' suit is "based on or in response to Cweren's exercise of his right to petition as the attorney for the [Cweren Law Firm] in the [c]ounty [c]ourt [s]uit" because appellees sued Cweren for filing suit against them in the county court suit and for winning a motion for sanctions in the county court suit. Thus, appellants assert that "[t]he actions taken by [a]ppellees" in the instant case "were a direct result of the happenings in the [c]ounty [c]ourt [s]uit."

The "[e]xercise of the right to petition" includes any "communication in or pertaining to . . . a judicial proceeding." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(A)(i) (internal quotations omitted). And a "[c]ommunication includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* at § 27.001(1) (internal quotations omitted). Here, appellees' suit is not based on or in response to appellants' asserted communications in the county court suit, i.e., the filing of the county court suit, the serving of the county court suit on appellees, and the "winning" of a motion for sanctions in the county court suit. *See DOJO Bayhouse, LLC v. Pickford*, No. 14-20-00237-CV, 2021 WL 6050677, at *5 n.9 (Tex. App.—Houston [14th Dist.] Dec. 21, 2021, no pet.) (mem. op.) ("[C]ourts cannot blindly accept attempts by a TCPA movant to characterize the plaintiff's claims as implicating protected expression."). Instead, appellees' suit is based on appellants' failures to

36

act, breaches of the standard of care, conduct, and misrepresentations, virtually all of which allegedly occurred before the county court suit was filed. *Cf. ML Dev, LP v. Ross Dress for Less, Inc.*, 649 S.W.3d 623, 629 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) ("TCPA movants [are required] to establish a closer nexus between the claims against them and the communications they point to as their exercise of protected rights."); *see also Pacheco v. Rodriguez*, 600 S.W.3d 401, 410 (Tex. App.—El Paso 2020, no pet.) ("[W]hen a claim does not allege a communication, and is instead based on a defendant's conduct, the TCPA is not implicated."); *Smith v. Crestview NuV, LLC*, 565 S.W.3d 793, 798–99 (Tex. App.—Fort Worth 2018, pet. denied) (recognizing claim must "allege a communication" in order to invoke TCPA).

Appellees have brought four claims against appellants which were subject to appellants' TCPA motion to dismiss: (1) negligence, (2) gross negligence, (3) breach of fiduciary duty, and (4) abuse of process. *See Hersh*, 526 S.W.3d at 467 (allegations in non-movant's pleading were "best and all-sufficient evidence of the nature" of non-movant's claims). As to their negligence and gross negligence claims, appellees alleged that to the extent that appellants represented Eureka in an attorney-client relationship, appellants were negligent in failing to protect Eureka's interests by not giving legal advice about any allegedly wrongful, unlawful, or fraudulent actions, imputable or otherwise harmful to Eureka, and that were

committed by any officer, employee or other person associated with Eureka. Such negligence included appellants' "failure to first attempt to resolve an alleged legal violation by taking measures within [Eureka] and [appellants'] disclos[ure] [of] the alleged violation publicly, when there was no legal duty on the part of [appellants] to do so." To the extent that appellants represented Campos, Arnold, and Robertson, individually, in an attorney-client relationship, appellees alleged that appellants were negligent in failing to give legal advice about any allegedly wrongful, unlawful, or fraudulent actions, imputable or otherwise harmful to Eureka, that were committed by Campos, Arnold, and Robertson, as officers, employees, or other persons associated with Eureka. Such negligence included appellants' "failure to advise [Campos, Arnold, and Robertson] that their alleged conduct that [appellants] perceived to be unlawful, wrongful, or fraudulent while occurring, needed to be remediated." These claims are not predicated on appellants' communications in a judicial proceeding.

As to their breach-of-fiduciary-duty claims, appellees alleged that appellants owed appellees a fiduciary duty based on the purported attorney-client relationship between appellees and appellants. Appellants owed appellees the duty of loyalty and utmost good faith, the duty of candor, the duty to refrain from self-dealing, the duty to act with integrity of the strictest kind, the duty of fair and honest dealing, the duty of full disclosure of all material facts, the duty to represent appellees with

38

undivided loyalty, and the duty to act with absolute candor, openness, honesty, and without any concealment or deception. Appellants breached their fiduciary duty to appellees by: (1) acting to promote their own financial interests ahead of the interests of appellees at a time when the alleged attorney-client relationship between appellants and appellees, or members of the Eureka organization, was ongoing and had not been terminated; (2) harassing appellees and acting in a hostile and adversarial posture toward appellees who appellants were claiming to be clients, on a basis that constituted a conflict of interest, without disclosing the existence of such conflicts, obtaining a waiver of the same, and without withdrawing from the ongoing representation; (3) improperly and unlawfully using confidential client information provided by appellees adversely to them, without their knowledge or consent; and (4) misrepresenting appellants' background, experience, depth of personnel, and industry affiliations to induce Eureka to authorize appellants' retention by properties within the Eureka managed portfolio. These claims likewise are not predicated on appellants' communications in a judicial proceeding.

As to the abuse-of-process claim, Campos alleged that he was served with process in the county court suit, and appellants made an illegal, improper, or perverted use of the process after it was issued. The process was used by appellants to accomplish some end other than its lawfully intended purpose, i.e., to embarrass and harass Campos. Process was also used to conceal from Campos that he had

actually been served in the county court suit and to collect from him sums of money that he did not owe and damages arising from conduct that he did not engage in. Although Campos's abuse-of-process claim may relate to the county court suit,[17] it does not attack the substance of the Cweren Law Firm's claims in the county court suit nor is it based on or in response to any of the substantive allegations in the county court suit. *Cf. Sorkin v. P.T. Atlas Mfg., L.L.C.*, No. 05-21-00657-CV, 2022 WL 780444, at *1–4 (Tex. App.—Dallas Mar. 15, 2022, pet. denied) (mem. op.) (disagreeing non-movants' claims for breach of contract, misrepresentation, fraud,

---

[17] We note that when the Texas Legislature, in 2019, amended the TCPA, it narrowed the categories of connections a claim could have to the exercise of a protected right to enable a movant to obtain a dismissal. *See Union Pac. R.R. v. Dorsey*, 651 S.W.3d 692, 699 n.6 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *ML Dev, LP v. Ross Dress for Less, Inc.*, 649 S.W.3d 623, 626–27 (Tex. App.—Houston [1st Dist.] 2022, pet. denied); *see also Hill v. Keliher*, No. 01-20-00419-CV, 2022 WL 3031620, at *1 n.1 (Tex. App.—Houston [1st Dist.] Aug. 2, 2022, no pet.) (mem. op.) (noting Legislature's 2019 amendments to TCPA narrowed its application); *Newstream Hotels & Resorts, LLC v. Abdou*, No. 02-21-00343-CV, 2022 WL 1496537, at *2 n.1 (Tex. App.—Fort Worth May 12, 2022, pet. denied) (mem. op.) ("The Legislature recently narrowed the applicability of the TCPA, which informs [an appellate court's] decision . . . ."). Although previously a movant, to obtain dismissal under the TCPA, had to establish that a claim against it was either "based on, relate[d] to, or . . . in response to" the movant's exercise of a protected right, that is no longer the case. *See ML Dev, LP*, 649 S.W.3d at 626–27 (internal quotations omitted). The Legislature's 2019 amendment deleted "relate[d] to" from the list; thus, the TCPA now requires a movant to establish that the claim it seeks to dismiss is "based on" or "in response to" its exercise of a protected right. *Id.* at 626–27 (internal quotations omitted). We must presume that the Legislature intended its deletion of the phrase "relate[d] to" to have an effect, and a movant seeking to dismiss a claim against it under the TCPA must now establish "a closer nexus between the claim[] against [it] and the communication[] [it] point[s] to as [its] exercise of protected rights." *Id.* at 629 (internal quotations omitted).

40

and abuse of process in newly filed Dallas County suit challenged movants' right to petition in Harris County suit); *see also Blue Gold Energy Barstow, LLC v. Precision Frac, LLC*, No. 11-19-00238-CV, 2020 WL 1809193, at *5 (Tex. App.—Eastland Apr. 9, 2020, no pet.) (mem. op.) ("[T]o establish that the nonmovant's claim is based on[] . . . or in response to the movant's filing of previous litigation, the movant must show that the claim is 'premised on' the prior lawsuit."). And Campos's abuse-of-process claim is based on conduct, not a communication within the meaning of the TCPA. *See, e.g.*, *Clinical Pathology Labs., Inc. v. Polo*, 632 S.W.3d 35, 46–47 (Tex. App.—El Paso 2020, pet. denied); *Riggs & Ray, P.C. v. State Fair of Tex.*, No. 05-17-00973-CV, 2019 WL 4200009, at *4 (Tex. App.—Dallas Sept. 5, 2019, pet. denied) (mem. op.); *see also Newstream Hotels & Resorts, LLC v. Abdou*, No. 02-21-00343-CV, 2022 WL 1496537, at *2 (Tex. App.—Fort Worth May 12, 2022, pet. denied) (mem. op.) ("[M]erely alleging conduct that has a communication embedded within it does not create the relationship between the claim and the communication necessary to invoke the TCPA."); *ML Dev, LP*, 649 S.W.3d at 628 (although alleged statements "may have accompanied" complained-of conduct, communications themselves did not "provide the basis for the legal claims or the impetus for suit"); *Pacheco*, 600 S.W.3d at 410 ("[W]hen a claim does not allege a communication, and is instead based on a defendant's conduct, the TCPA is not implicated.").

Here, we remain mindful of our obligation to consider appellees' pleadings in the light most favorable to appellees and in favor of the conclusion that appellees' claims are not reliant on protected expression. *Abundant Life Therapeutic Servs., Tex., LLC v. Headen*, No. 05-20-00145-CV, 2020 WL 7296801, at \*3 (Tex. App.—Dallas Dec. 11, 2020, pet. denied); *see also Abdou*, 2022 WL 1496537, at \*2; *Damonte v. Hallmark Fin. Servs., Inc.*, No. 05-18-00874-CV, 2019 WL 3059884, at \*5 (Tex. App.—Dallas July 12, 2019, no pet.) (mem. op.) ("We cannot blindly accept attempts by the movant to characterize the [non-movant's] claims as implicating protected expression." (internal quotations omitted)). We must read appellees' pleadings "in [a] manner most sympathetic to the TCPA's non-applicability." *White Nile Software, Inc. v. Carrington, Coleman, Sloman & Blumenthal, LLP*, No. 05-19-00780-CV, 2020 WL 5104966, at \*4 (Tex. App.—Dallas 2020, pet. denied). Notably, although appellants and appellees were involved in the county court suit before appellees filed suit in the instant case, this does not mean that every subsequent action after the county court suit results in litigation that is based on or in response to the county court suit. *See Chandni, Inc. v. Patel*, 623 S.W.3d 425, 435–36 (Tex. App.—El Paso 2019, pet. denied); *see also Beving v. Beadles*, 563 S.W.3d 399, 408 (Tex. App.—Fort Worth 2018, pet. denied) ("There are myriad reasons for deciding if and when to bring a legal action against a person."). "The TCPA's purpose is to identify and summarily dispose of lawsuits

42

designed only to chill First Amendment rights, not to dismiss of meritorious lawsuits." *In re Lipsky*, 460 S.W.3d at 589.

Based on the foregoing, we conclude that appellants have not shown by a preponderance of the evidence that appellees' claims are based on or in response to appellants' exercise of their right to petition. Thus, we hold that appellants' TCPA motion to dismiss was properly denied by operation of law.

We overrule appellants' second and third issues.

## Conclusion

We affirm the trial court's denial by operation of law of appellants' TCPA motion to dismiss. We dismiss any pending motions as moot.

Julie Countiss
Justice

Panel consists of Justices Goodman, Countiss, and Farris.